**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ARMANDO HERNANDEZ, MICHAEL WANDS, MICHAEL RODRIGUES, and JOE ALVAREZ, Individually and on Behalf of All Others Similarly Situated, As Class Representatives, | ) ) ) ) ) ) ) | **CV** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **JURY TRIAL REQUESTED** |
| C&S WHOLESALE GROCERS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**BRIEANT**

**06 CIV. 2675**

## CLASS ACTION COMPLAINT

Plaintiffs Armando Hernandez, Michael Wands, Michael Rodrigues and Joe Alvarez (hereinafter "Plaintiffs" or "Representative Plaintiffs"), current and former "piece-rate" warehouse workers employed by Defendant C&S Wholesale Grocers, Inc. ("C&S" or the "Company"), bring this action in their individual capacity and on behalf of a class of persons defined below, and by their attorneys Sanford Wittels & Heisler, LLP, allege, upon knowledge as to themselves and their own acts, and otherwise upon information and belief, as follows:

I.     **OVERVIEW OF DEFENDANT C&S WHOLESALE GROCERS' ILLEGAL AND UNFAIR WAGE & HOUR AND LABOR LAW VIOLATIONS**

1.     <u>**The Claims:**</u>  This class action seeks to remedy the rampant illegal labor practices of Defendant C&S Wholesale Grocers, Inc., which cheats its workers out of millions of dollars in wages each week in all 14 states where the company employs warehouse workers: New York, New Jersey, Connecticut, Pennsylvania, Massachusetts, New Hampshire, Vermont, Ohio, Maryland, South Carolina, Tennessee, Alabama, California, and Hawaii.

2.     With more than 20,000 employees, C&S is the second-largest wholesale grocery store supplier and the eighth largest privately-held corporation in the United States.  Its revenues are projected to top $18 billion in 2006.

3.     Using tactics reminiscent of the Gulag labor system, this grocery giant illegally cuts the hourly pay of its piece-workers, by *inter alia:*

> (i)     making unlawful deductions from their hourly wages as punishment for mistakes on the job, lack of productivity, safety concerns, or absences – notwithstanding that such deductions are uniformly forbidden in the states where C&S operates;

> (ii)    failing to pay employees their agreed hourly rates and for all hours actually worked; and

> (iii)   failing to pay any overtime or the full amount due.

4.      Plaintiffs and the Class of thousands of piece work incentive employees seek restitution of $750 million in unpaid wages, overtime and related benefits from their employer, C&S Wholesale Grocers.  Plaintiffs sue on behalf of such piece-rate employees in all 14 states where C&S has warehouses under state wage and hour laws, as well as under the Federal Fair Labor Standards Act ("FLSA").

5.      Defendant C&S' conduct violates numerous statutes including: (a) New York Labor Law §190 *et. seq. (Counts 1, 3, 5, 8, 11), (*b) the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. (*Counts 7 and 10*), and (c) the statues of various states where C&S warehouses are located (*Counts 2, 4, 6, 9 and 12).*

6.      **Defendant C&S' Scheme to Underpay Its Workers:**  Plaintiffs worked in C&S' enormous 500,000 square-foot facility in Newburgh, New York, one of more than 50 such warehouses owned by Defendant throughout the United States.  These warehouses are open 24-7.  Each warehouse employs hundreds of workers on multiple shifts, typically receiving and shipping thousands of different grocery and freezer products per week.

7.      Plaintiffs and the class work on a purely incentive pay basis in such jobs as product "Selectors" and "Hi-Lo Operators."  Putting in long and grueling hours, these employees enable Defendant to supply some of the largest supermarket chains in the United States including A&P, Shaw's, and BJ's Wholesale Club.

8.     In 1988, Defendant C&S introduced a new "incentive" program for paying warehouse employees that is still in use today.  Under the scheme, employees were assigned to 4-8 men "teams."  C&S represented to Plaintiffs that their compensation would be based on the actual number of cases the team "selected" and readied for shipping.  These representations were false.

9.     Defendant told selectors they would be paid 10 cents per case.  In practice, however, C&S almost always pays less than the going rate, relying on so-called worker "infractions" to deduct earned wages.  Defendant C&S knowingly breaks the law in all 14 states by decreasing the per case rate as low as 7 or 8 cents and calling it a "*Disciplinary Rate.*"

10.     According to the Company website, the piece-rate "program proved to be a huge success."  For management, that is.  Within six months after introducing the new program, **"the total volume shipped increased by 35%, while total labor costs declined by more than 20%."**

11.     Defendant C&S' website claims that an "*important part of the compensation program is the quality bonus C&S pays team members for doing their job accurately.  The team process results in high morale.*"  Upon information and belief, the only bonus a C&S team member ever receives for a job well done is either a company T-shirt, company hat, company mug, company cupholder, company windbreaker, company keychain, or, in special circumstances, the grand prize: a company jacket, all embossed with the company logo: "C&S."  Not exactly what comes to mind as big morale boosters.

4

12.    On its website and on the identification cards the Company forces its employees to carry, Defendant proclaims that its warehouses are brimming with "*Braggingly Happy Team Members.*"  The sad truth is that the only people bragging are the Company's executives, who have managed to boost profits on the backs of the Company's workforce who must suffer unfair labor practices or lose their jobs.  Such illegal cost-savings have helped C&S become the country's fastest growing grocery distributor with annual average growth of 19.6% since 1995.

13.    The idealized, "braggingly happy" work-a-day world envisioned by C&S and its CEO Rick Cohen is a far different place from the depressing reality that Plaintiff "team members" and thousands of other such C&S team members experience every day.  These team members daily go to work not knowing how much they will earn -- subject to unannounced hourly wage deductions at the whim of supervisors.  Working harder to make less is not something that gives the average C&S worker much happiness.

14.    **Class Action Relief Sought:**  Plaintiff "piece-rate incentive pay workers" seek class certification under Rule 23 of the Federal Rules of Civil Procedure for all similarly situated C&S incentive compensation employees in (i) New York, (ii) New Jersey, (iii) Connecticut, (iv) Pennsylvania, (v) Massachusetts, (vi) New Hampshire, (vii) Vermont, (viii) Ohio, (xi) Maryland, (x) South Carolina, (xi) Tennessee, (xii) Alabama, (xiii) California, and (xiv) Hawaii who were denied full and properly calculated regular and overtime wages.

15.     Plaintiffs bring Counts 1-6, 8, 9, 11-12 under New York law and the laws of 13 other states, and Counts 7 and 10 under the Fair Labor Standards Act ("FLSA").   Plaintiffs aim to compel C&S to disgorge its illegally-obtained profits and return to the employees their rightful unpaid compensation, together with prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b). Plaintiffs also seek an injunction to force C&S to stop its unlawful labor practices.

16.     Unless this case is certified as a class action, Defendant C&S will continue its unlawful labor practices with impunity.   That would, unfortunately, truly give this grocery behemoth something to brag about.

## II.   JURISDICTION AND VENUE

17.     This Court possesses federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because many of Plaintiffs' counts are brought under federal law, 29 U.S.C. § 201 et seq.

18.     This Court possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because state law claims arise out of the same case and controversy.   Additionally, state law claims do not involve new or novel aspects of state law nor do they predominate over federal issues.

19.     For the following reasons, this Court also possesses federal subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 (109 P.L. 2; 119 Stat. 4; effective February 18, 2005):

        a.   the number of members of the proposed plaintiff class is 100 or more;

b.    there is diversity of citizenship between *any one* member of the plaintiff class (named and unnamed) and the defendant; Plaintiff-Hernandez is a resident of New York, Plaintiff-Wands is a resident of New York, Plaintiff-Rodrigues is a resident of New York, and Plaintiff-Alvarez is a resident of New York while defendant C & S Wholesale Grocers, Inc. is a foreign corporation with its principal place of business in the state of New Hampshire; and

c.    the amount in controversy – which may be calculated by aggregating the claims of the putative class members – exceeds $5 million.

20.    Venue belongs in this district pursuant to 28 U.S.C. § 1391 (a) (1) and (2). A substantial part of the events and the omissions giving rise to Plaintiffs' claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district. Additionally, C&S is deemed to reside in this district because it is subject to personal jurisdiction there.

21.    Defendant is amenable to personal jurisdiction in New York State. This lawsuit arises from C&S' wrongful conduct in New York State. C&S derives substantial revenue from the sale of products within New York State, and conducts business within the state sufficient to be considered present in New York.

## III.   <u>THE PARTIES</u>

22.    At all times relevant to this action, Plaintiff Armando Hernandez resided and continues to reside in New Windsor, New York. Plaintiff Hernandez worked for C&S from August 2000 through February 2004.

23.    At all times relevant to this action, Plaintiff Michael Wands resided and continues to reside in Newburgh, New York. Plaintiff Wands currently works for C&S, and started working for Defendant in December 1999.

24.     At all times relevant to this action, Plaintiff Michael Rodrigues resided and continues to reside in Newburgh, New York.  Plaintiff Rodrigues worked for C&S from the end of 2000 through the fall of 2002.

25.     At all times relevant to this action, Plaintiff Joe Alvarez resided and continues to reside in Newburgh, New York.  Plaintiff Alvarez worked for C&S from March 2000 through March 2002.

26.     Upon information and belief, Defendant C&S Wholesale Grocers, Inc. is a grocery wholesale food distribution company incorporated in New Hampshire.  Its primary headquarters are located in Keene, New Hampshire.

27.     From its storage space of over 15 million square feet located in 14 states throughout the United States, Defendant C&S provides 53,000 food and nonfood items to 4,000 corporate customers.  These goods include produce, meat, dairy products, delicatessen products, fresh/frozen bakery items, health and beauty aids, candy and tobacco.

28.     The Defendant Company's customers include supermarket chains such as Pathmark, Safeway, Giant Food Stores, Shaw's, Stop and Shop, A&P Food Mart, Big Y Foods, BJ's Warehouse, Great American, SavMart/Foodmax, and Demoulas as well as independent store/supermarket owner/operators.

29.     At all relevant times, Defendant C&S has been and continues to be an "employer" within the meaning of N.Y. Labor Law §§ 190, et seq., and §§ 652, et seq.

30.     At all relevant times, Defendant C&S employed and continues to employ, employees, including the New York Class Representatives and all

members of the New York piece work incentive worker subclass, within the meaning of N.Y. Labor Law §§ 190, et seq. and §§ 652, et seq.

31.    Defendant C&S also employed and continues to employ all members of the 14-state class of piece-rate incentive workers.

32.    At all relevant times, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the New York Subclass and 14-State Subclass have earned and continue to earn "wages" for labor or services rendered to C&S, including earnings determined on a time, piece, commission or other basis, within the meaning of N.Y. Labor Law §190(1) and the laws of the other states specified in Counts 1-6, 8, 9, and 11-12 below.

## FACTUAL ALLEGATIONS

### A.    C&S Hires the Named Plaintiffs as Piece-Rate Incentive Workers

33.    Commencing in or around 1999 and 2000, Defendant C&S hired the representative Plaintiffs Armando Hernandez, Michael Wands, Michael Rodrigues and Joe Alvarez to work in its warehouse facility in Newburgh, New York.  The Newburgh facility is part of a vast network of more than 50 huge storage and distribution warehouse centers that Defendant C&S operates in 14 states.

34.    Defendant C&S informed the named Plaintiffs at their time of hiring that they would be "*incentive*" piece-rate workers, specifically "Selectors."

35.    A Selector in a C&S warehouse picks, wraps, checks and loads a customer's order. Customers are typically independent grocery stores, supermarkets and military bases throughout the United States who order their

9

products from C&S.

36.    In addition to Selectors, C&S employed other incentive-based warehouse workers in its warehouses including hi-lo lift operators.  During their work careers at C&S, Plaintiffs Hernandez and Alvarez also periodically performed these and other warehouse incentive-paid jobs.

37.    Defendant's managers told Plaintiffs that during a training period each Plaintiff would be paid a flat hourly rate.  Plaintiffs were also informed that when training was complete (after a few weeks), they would then be paid as incentive piece-workers, earning 10 cents per case picked.  For time on the job when they were not "selecting," but doing other tasks, C&S told Plaintiffs they would be paid their Eight Week average piece-rate ("8-Week average").

38.    Defendant C&S similarly informed other incentive workers they would be paid for piece-work completed.  For example, hi-lo operators were told they would receive $1 per pallet of merchandise delivered to the Selectors.

### B.    C&S' Scheme to Pay Incentive Workers Less Than the Agreed Piece-Work Rate

39.    At the time they were hired, Defendant C&S told Plaintiffs and the class of C&S incentive workers that their earning potential was extremely high, as the company would pay them for the actual amount of "pieces" that the worker and his team selected.  What Defendant C&S did not disclose, however, was that the company had devised a sweat-shop scheme to avoid paying its incentive workers their actual regular and overtime earnings.

40.    The scheme worked as follows.  Defendant C&S created "teams" of 4-8 warehouse workers to fill customers' orders.  Selectors like Plaintiffs were

given daily work orders – also called "loads" -- containing long lists of cases ("pieces") to be selected.  C&S encouraged its employees to work as fast as possible to fill the orders since the workers would be paid 10 cents for each case (piece) of merchandise picked.

41.     In order to keep track of how many cases a worker picked, C&S gave the workers UPC-readable "shot" stickers, describing the particular order needed to be filled.  Upon filling an order, which for example, might consist of 1000-2000 separate cases per load, an employee working in the shipping department would record the number of items picked on a team summary sheet. At the end of the shift, the number of orders (loads) would be logged into the computer to keep track of how many cases were picked by a particular team.

42.     Unfortunately for C&S workers, the company never planned on paying its incentive workers for the actual amount of cases picked.  Instead, C&S directed its supervisors to audit teams' performance and look for a variety of pretexts to cut workers' pay, including such factors as wrapping errors, stacking errors, stickering errors, or lack of cleanliness.

43.     For example, if Plaintiff Armando Hernandez's job on a particular day involved selecting cases of apple juice, and another member of his team mistakenly selected a case of grape juice instead of apple juice, the C&S supervisor punished every member of the team by cutting the amount paid for a case from the agreed-upon 10 cents to 8 ½ cents, or even as low as 7 cents. But the punishment didn't simply cover the one particular case.  C&S used the mistake as a basis to lower both the individual plaintiff's and the whole team's

11

piece-rate work for the entire day, week, or even months.  For each worker, the 20-30% pay cut could amount to more than $100 per week.

44.     Defendant C&S' "Disciplinary Rate" scheme is uniform both in New York and in all 13 other states where C&S employed warehouse workers.  By wrongfully cutting its workers' hourly pay through illegal deductions, Defendant's actions had a snowball effect on Plaintiffs' wages.  Lower hourly wages led to lower overtime pay and a lower 8-Week average hourly rate.

45.     In addition, Defendant C&S also failed to pay Plaintiffs their rightful hourly rate earned during a shift when the "selecting" work for a particular shift ended.  For example, if the named Plaintiffs finished selecting their assigned orders for customers during a shift, then, during the remaining hours left in the work day, management was supposed to pay incentive workers their 8-Week average piece-rate.  Instead, Defendant arbitrarily paid Plaintiffs and the Class at a lower rate of $9 (or $8) per hour for the remaining hours worked during the shift.  C&S labeled this [under] compensation "Utility Pay."

46.     Defendant's wrongful conduct in paying incentive workers at a much lower hourly rate than their 8-Week piece-rate average had, and has, the snowball effect of lowering Plaintiffs' and the Class' hourly 8-Week average. C&S also uses the 8-Week average to pay workers for vacation time, sick pay and holiday pay.  Thus, by wrongfully paying Plaintiffs and the Class $9 per hour instead of the much-higher 8-Week piece-rate average hourly rate, C&S again underpays its workers.

C.   **Summary of Multiple Ways that C&S Conspired to Pay Plaintiffs and the Class Less than Their Lawful Wages**

47.   Defendant C&S engages in a multiplicity of outlawed management-driven strategies to avoid paying Plaintiffs and the Class of incentive workers their full earned wages.   Defendant C&S consistently robs its employees by encouraging and maintaining a system of unfair labor practices at its Newburgh facility, where Plaintiffs worked, and upon information and belief, at all of its more than 50 warehouse facilities in 14 states.   These common illegal labor practices include the following:

(a)   **C&S Fails to Pay Workers for Time Worked Before and After Shifts**

48.   Prior to each shift, Defendant's supervisors and managers told Plaintiffs and the Class to arrive at least half an hour early to receive their daily work assignments and obtain their work tools such as pallet jacks and batteries, all of which were needed to accomplish the team's work tasks.   Although Plaintiffs and the Class of Incentive workers commonly followed C&S' instructions, arriving at least half an hour before the scheduled shift, C&S violated its obligation to pay employees for this time worked.

49.   Further, after a shift was completed, C&S also typically required workers to stay for at least a half a hour to put away the materials used during the shift, and/or to clean the areas worked.   C&S also violated its duty to record this time worked, and also failed to pay workers for such time worked after the shift.

50.   Because the time worked by Plaintiffs and the Class before and

after each shift was integral to the work performed during their regularly scheduled shift, Defendant was obligated to compensate its employees for this pre- and post-shift work, but wrongfully failed to do so.

51.     As a result of Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S for unpaid work prior to and after regularly-scheduled shifts.

### (b)     C&S Wrongfully Penalizes Its Incentive Workers by Making Unauthorized Deductions from their Wages

52.     Defendant C&S agreed to pay Plaintiffs and the Class of incentive pay workers at pre-established, specified incentive wage rates.  C&S agreed to pay Selectors 10 cents per case.  C&S agreed to pay Hi-Lo operators $1 per pallet.  Instead of paying these agreed incentive wage rates, C&S wrongfully, arbitrarily, and illegally paid Plaintiffs and the Class less than the agreed rate.

53.     Defendant C&S, as one of the largest private employers in the United States, is well aware that New York law and all states in which it does business forbid the company from punishing workers by making deductions from their wages for worker's errors or absences.  Yet the Company willfully violated the states' wage and hour laws in order to save labor costs and increase its profits.

54.     Because of Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S for its illegal deductions from their earned piece-work wages.

(c)     **C&S Fails to Pay Incentive Workers**
        **Their 8-Week Average Hourly Rate**

55.     Defendant C&S agreed to pay Plaintiffs and the Class of incentive pay workers at their 8-Week piece-rate average during the times in a worker's shift he was not actually picking.   In violation of this agreement, Defendant unilaterally and wrongfully paid incentive workers a "utility rate" of $9 that was neither agreed to by workers before they were hired, nor afterwards.

56.     As a result of Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S because Defendant wrongfully paid a utility hourly rate of $9 instead of the workers' much higher 8-Week average hourly rate, which is based on the 10 cents/$1 piece rate.

(d)     **C&S Wrongfully Paid Incentive Workers**
        **Less Overtime Than Was Owed**

57.     Plaintiffs and the Class frequently worked more than eight hours per day and/or forty hours per week for Defendant C&S.  Accordingly, Defendant C&S was and is required by law to pay Plaintiffs and the Class overtime calculated at the rate of one and one-half times the worker's hourly rate.

58.     Defendant C&S engaged in a scheme to lower the amount of overtime paid to workers by wrongfully reducing the worker's regular hourly rate. In addition, C&S undercounted the number of overtime hours (and amount of such pay) due to class members.  C&S failed to include compensable time the workers spent working off the clock before and after shifts, and during lunch and breaks.

59.     By both artificially lowering workers' hourly wages and not including

15

the full number of hours worked during a week, Defendant C&S was able to pay either no overtime or far less to workers than was actually owed as overtime wages.

60.     Based on Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S because Defendant underpaid them full overtime owed.

### (e)  C&S Wrongfully Paid Incentive Workers Less Vacation Pay, Sick Pay and Holiday Pay Than Owed

61.     Defendant C&S agreed to pay Plaintiffs and the Class for vacations, sick pay, and holiday pay at an hourly rate based on the workers' 8-Week piece-rate average hourly wage.

62.     Defendant C&S artificially lowered the 8-week piece-rate average, however, by using the $9 utility rate to calculate the average.  This reduced the actual compensation Plaintiffs earned in the form of vacation pay, sick pay and holiday pay.

63.     Because of Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S for having been paid an artificially-lowered vacation pay, sick pay and holiday pay.

### (f)  C&S Wrongfully Failed to Pay Workers for Time Spent Working Off the Clock and Working Through Lunch and Breaks

64.     In order to keep their 8-Week Hourly wages up, Plaintiffs and the Class ordinarily worked through their half-hour allotted lunch and dinner breaks as well as their two 15-minute breaks, without recording this as time worked. Plaintiffs did this so that when their average hourly rate was calculated – i.e., by

dividing the incentive pay by the number of hours worked – the average hourly rate would be higher. This average hourly rate then formed the basis for Plaintiffs' and the Class' 8-Week average.

65. C&S wrongfully misled Plaintiffs and the Class into believing that their 8-Week Average would be used as the basis for pay during the shift when Plaintiffs were not picking. Thus, Plaintiffs and the Class typically worked through meals and their breaks without recording these hours to boost their Eight-Week average.

66. In addition, Plaintiffs and the Class frequently worked off-the-clock, intentionally punching out their time cards, but continuing to work, in order to keep their eight-week average up.

67. Plaintiffs' supervisors were well aware that Plaintiffs and the Class habitually worked through meals and breaks, and off-the-clock without being compensated. Indeed, C&S supervisors encouraged employees to work through meals and breaks. Supervisors often clocked the workers out and continued to supervise them as they worked during the shift.

68. C&S supervisors also encouraged employees to arrive at work early by rewarding them with preferable "load sheets" containing the largest number of pieces if they arrived at least half an hour before clocking in.

69. As a result of Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S for not being paid for hours worked during meals, scheduled fifteen-minute breaks, and for time worked "off-the-clock."

17

(g)     **C&S Failed to Pay All Workers In
New York and California Their "Spread of Hours" Pay
for Time Worked in Excess of 10 Hours**

70.     Plaintiffs and the Class periodically worked more than ten hours per day for Defendant C&S.  Accordingly, Defendant C&S was and is required by law to pay Plaintiffs and the Class an extra hours' pay for time worked in excess of the 10-hour shift pursuant to 12 N.Y.C.R.R. § 142-2.18 and California law. (Cal. Labor Code, § 510.)

71.     Additionally, because Defendant C&S frequently encouraged employees to work off the clock and failed to include hours preceding and following the shift, C&S consistently shortened the length of the day worked by employees.  In doing so, numerous shifts that extended beyond ten hours and warranted an additional hour's pay were not treated as such.

72.     By failing to pay workers under New York's and California's "spread of hours" regulation, Defendant C&S engaged in a scheme to lower the amount of overtime paid to workers.

73.     Based on Defendant C&S' misconduct, Plaintiffs and the Class are each owed thousands of dollars by C&S because C&S did not pay them an extra hour's pay for each hour worked over ten hours in a day.

## COLLECTIVE ACTION UNDER THE FLSA

74.     Plaintiffs Armando Hernandez, Michael Wands, Michael Rodrigues, and Joe Alvarez bring Counts VII and X for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all

persons who were, are, or will be employed by Defendant C&S as piece-rate warehouse employees in Alabama, California, Connecticut, Hawaii, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Tennessee, and Vermont, at any time within the applicable statute of limitations period, who have not been fully compensated for all actual time worked and wages earned and other benefits, and/or who have not been fully compensated for all overtime hours at one and one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week.

75.     Questions of law and fact common to the Class as a whole, but not limited to the following, include:

a.     Whether C&S unlawfully failed and continues to fail to fully pay all actual time worked and wages earned by the FLSA Collective Plaintiffs and the prospective FLSA Collective Plaintiffs in violation of FLSA, 29 U.S.C §§ 201, et seq.;

b.     Whether C&S unlawfully failed and continues to fail to fully pay all overtime compensation earned by the FLSA Collective Plaintiffs and the prospective FLSA Collective Plaintiffs in violation of FLSA, 29 U.S.C §§ 201, et seq.;

c.     Whether C&S' policy and practice of failing to fully pay all actual time worked and wages earned, and whether C&S' policy and practice of failing to fully pay overtime compensation earned violates applicable provisions of the FLSA;

     d.    Whether C&S' failure to pay all actual time worked and wages earned, and all overtime compensation earned was willful within the meaning of the FLSA;

     e.    Whether C&S failed and continues to fail to maintain accurate records of actual time worked by the FLSA Collective Plaintiffs and the prospective FLSA Collective Plaintiffs;

     f.    Whether C&S failed and continues to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the FLSA Collective Plaintiffs and the prospective FLSA Collective Plaintiffs.

76.    Counts VII and X for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. 216(b), for all claims asserted by the representative Plaintiffs of the FLSA Collective Plaintiffs (FLSA claims), because the claims of the Plaintiffs are similar to the claims of the members of the prospective FLSA Collective Plaintiffs.

77.    Plaintiffs Armando Hernandez, Michael Wands, Michael Rodrigues, and Joe Alvarez and the FLSA Collective Plaintiffs are similarly situated, have substantially similar job requirements and pay provisions, and are subject to C&S' common policy and practice of failing to pay for all actual time worked and wages earned, and failing to fully pay for all overtime in violation of the FLSA.

## CLASS ACTION ALLEGATIONS

78.    Plaintiffs Armando Hernandez, Michael Wands, Michael Rodrigues,

and Joe Alvarez bring this action in their individual capacity, and as a class

action on behalf of three subclasses of C&S employees, defined as follows:

(i)    All persons who are, were, or will be employed by C&S as

piece-rate incentive pay warehouse workers in New York

State, at any time during the applicable statute of limitations

period, (a) who suffered unlawful penalty deductions from their

wages, and/or (b) did not receive the full amount of

compensation that C&S agreed to pay, and/or (c) did not

receive compensation for overtime hours worked, and/or (d)

did not receive compensation for all actual time worked and

wages earned, and/or (e) did not receive spread of hours

compensation for work days exceeding ten hours;

(ii)   All persons who are, were, or will be employed by C&S as

piece-rate warehouse workers in Alabama, California,

Connecticut, Hawaii, Maryland, Massachusetts, New

Hampshire, New Jersey, New York, Ohio, Pennsylvania,

South Carolina, Tennessee, and/or Vermont, at any time

during the applicable statute of limitations periods, (a) who

suffered unlawful penalty deductions from their wages, and/or

(b) did not receive the full amount of compensation C&S

agreed to pay, and/or (c) did not receive compensation for

overtime hours worked, and/or (d) did not receive

compensation for all actual time worked and wages earned;

and

(iii)    All persons who are, were, or will be employed by C&S as

piece-rate warehouse workers in California, at any time during

the applicable statute of limitations period, who did not receive

spread of hours compensation for work days exceeding ten

hours, as mandated by Cal. Labor Code § 510.

79.    The term "piece-rate incentive workers" includes, but is not limited

to, the following C&S positions: selector, hi-lo lift operator, slot cleaner, and

backhauler.

80.    This action is properly brought as a class action for the following

reasons:

a.    The class consists of thousands of persons, and is so

numerous that joinder of all members, whether otherwise

required or permitted, is impracticable.

b.    There exist questions of law and fact common to the class

which predominate over any questions affecting only individual

members, including:

1)    Whether C&S made deductions from employee wages in
violation of labor laws;

2)    Whether C&S failed to pay employees their full
compensation at the rates agreed to;

3)    Whether C&S failed to pay employees for all actual time
worked and wages earned;

22

4)    Whether C&S failed to fully pay employees all overtime compensation earned;

5)    Whether C&S failed to pay employees spread-of-hours compensation for shifts exceeding ten hours;

6)    Whether C&S should be enjoined from continuing its unlawful practices;

7)    Whether C&S is liable to the Class; and

8)    Whether the class can be made whole by payment of damages.

(c)    Plaintiffs' claims are typical of the claims of the class.  Like all class members, Named Plaintiffs Armando Hernandez, Michael Wands, Michael Rodrigues, and Joe Alvarez were employed in C&S warehouses and denied rightful compensation.  Named Plaintiffs have suffered the same kind of harm as other class members.

81.    Plaintiffs have hired counsel who are able and experienced in class action litigation, and who will fairly and adequately protect the interests of the class.

82.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The expense of individual litigation may be prohibitive and render it impractical for class members to sue C&S for wrongfully withheld wages.

## CAUSES OF ACTION

### COUNT I

### UNLAWFUL PENALTY DEDUCTION FROM WAGES
#### (New York State Labor Law Claims, N.Y. Labor Law § 193, Brought by Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on Behalf of Themselves and All Members of the New York Subclass)

83.     Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and all members of the New York Subclass repeat and incorporate by reference all other paragraphs of the complaint as if fully set forth herein.

84.     N.Y. Labor Law §193 strictly prohibits an employer from making any deduction or subtraction from an employee's compensation as a penalty for the employee's poor performance.  In violation of N.Y. Labor Law § 193, Defendant C&S has willfully and intentionally engaged in a widespread pattern and practice of unlawfully deducting wages from its incentive-pay employees.

85.     Defendant C&S regularly deducts incentive-pay wages from employees based on infractions of its "safety, quality, productivity and attendance" criteria.  Infractions result in wage deductions or "disciplinary rates." C&S often deducts wages based on an employee's mistakes.

86.     If an employee makes a mistake on the job, Defendant C&S will often cut the employee's piece-rate wage.  For employees like Plaintiffs working as selectors, C&S arbitrarily cuts the wage rate from ten cents (10¢) per case picked to lower rates such as eight and a half cents (8.5¢) per case (or less). Even worse, if **one** team member makes a mistake, C&S will collectively punish **everyone** on the team by dropping the team's piece-rate wage from ten cents (10¢) per case to lower rates such as eight and a half cents (8.5¢) cents per case

24

(or less).

87.    Similarly, Defendant C&S makes deductions from wages as a result of an employee's "absences."  C&S calculates the deduction for absences according to an arbitrary flat-rate penalty that reduces the piece-rate wage for selectors from ten cents (10¢) per case to lower rates including eight and a half cents (8.5¢) per case (or less).

88.    Defendant C&S also arbitrarily cuts the piece-rate work of its other incentive-pay employees including hi-lo lift operators and slot workers.

89.    By unlawfully deducting wages as alleged herein, C&S has violated and continues to violate N.Y. Labor Law § 193.

90.    As a result of Defendant C&S' unlawful acts, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez have suffered damages by being denied wages earned and due in accordance with N.Y. Labor Law § 190 et seq. and 12 NYCRR § 142-2.1 et seq.

91.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and members of the New York Subclass, seek damages in the amount of the respective unpaid wages earned and due during the six years previous to commencing this action, as provided by N.Y. Labor Law §§ 193, 198 and 663, and such other legal and equitable relief, including attorneys' fees and costs, as the Court deems just and proper.

## COUNT II

### UNLAWFUL PENALTY DEDUCTION FROM WAGES
(Multi-State Labor Law Claims in California, Cal. Labor Code §§ 221 & 2928; Connecticut, C.G.S.A. § 31-71e; Hawaii, H.R.S § 388-6; Maryland, MD Labor & Emply. § 3-503; Massachusetts, M.G.L.A. 149 §§ 152 & 150(a); New Hampshire, N.H.R.S. § 275:48; New Jersey, N.J.S.A. § 34:11-4.4; Ohio, OH R.C. § 4113.19; Pennsylvania, 43 P.S. § 260.3; South Carolina, S.C.S.A. § 41-10-40; Vermont, VT Code R. 24 090 003 §§ X & XI,
Brought by All Plaintiffs on Behalf of Themselves
and All Members of the Class)

92.     Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and all members of the class repeat and incorporate by reference all other paragraphs of the complaint as if fully set forth herein.

93.     Labor laws in the states of Alabama, California, Connecticut, Hawaii, Maryland, Massachusetts, New Hampshire, New Jersey, Ohio, Pennsylvania, South Carolina, Tennessee, and Vermont either expressly or implicitly prohibit an employer, like C&S, from making unauthorized deductions from employees' wages or compensation as a penalty for the employee's poor performance. See CA Labor Code §§ 221 and 2928; CT Gen. Stat. Ann. §31-71e; HI H.R.S § 388-6; MD Labor & Emply. § 3-503; MA M.G.L.A. 149 §§ 152 and 150(a); NH Rev. Stat. § 275:48; NJ Stat. § 34:11-4.4; OH R.C. § 4113.19; PA 43 P.S. § 260.3; SC Stat. § 41-10-40; and VT Code R. 24 090 003 §§ X and XI.

94.     In violation of such state labor laws, C&S has willfully and intentionally engaged in a widespread pattern and practice of unlawfully deducting wages from its incentive-pay employees in the states where C&S operates.

95.    Defendant C&S regularly deducts incentive-pay wages from employees based on infractions of its "safety, quality, productivity and attendance" criteria.  Infractions result in wage deductions or "disciplinary rates." C&S often deducts wages based on an employee's mistakes.

96.    If an employee makes a mistake on the job, Defendant C&S will often cut the employee's piece-rate wage.  For employees like plaintiffs working as selectors, C&S arbitrarily cuts the wage rate from ten cents (10¢) per case picked to lower rates such as eight and a half cents (8.5¢) per case (or less). Even worse, if **one** team member makes a mistake, C&S will collectively punish **everyone** on the team by dropping the team's piece-rate wage from ten cents (10¢) per case to lower rates such as eight and a half cents (8.5¢) per case (or less).

97.    Similarly, Defendant C&S makes deductions from wages as a result of an employee's "absences."  C&S calculates the deduction for absences according to an arbitrary flat-rate penalty that reduces the piece-rate wage for selectors from ten cents (10¢) per case to lower rates including eight and a half cents (8.5¢) per case (or less).

98.    Defendant C&S also arbitrarily cuts the piece-rate work of its other incentive-pay employees including hi-lo lift operators and slot workers.

99.    By unlawfully deducting wages as alleged herein, Defendant C&S has violated and continues to violate the labor laws of the states enumerated in this Count.

100.   As a result of Defendant C&S' unlawful acts, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez have suffered damages by being denied wages earned and due in accordance with state labor laws and regulations.

101.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez, on behalf of themselves and members of the class, seek damages in the amount of the respective unpaid wages earned and due during the applicable limitations period prior to commencing this action, and such other legal and equitable relief, including attorneys' fees and costs, as the Court deems just and proper.

## COUNT III

### FAILURE TO PAY AGREED WAGE RATE
**(New York State Labor Law Claims, N.Y. Labor Law §191 et seq.,
Brought by Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on Behalf
of Themselves and All Members of the New York Subclass)**

102.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and all members of the New York Subclass repeat and incorporate by reference all other paragraphs of the complaint as if fully set forth herein.

103.   N.Y. Labor Law § 195(1) requires an employer, such as C&S, to notify employees of their rate of pay at the time of hire.

104.   N.Y. Labor Law § 191 requires an employer, such as C&S, to pay all wages owed to an employee at the agreed upon rate when due.  C&S has willfully and intentionally violated N. Y. Labor Law § 191 by engaging in a widespread pattern and practice of failing to pay piece-rate incentive-pay employees at agreed upon wage rates.

105.   At the time of hire, C&S notified Plaintiffs Hernandez, Wands,

28

Rodrigues, and Alvarez and all members of the New York Subclass of their "rate of pay" as piece-rate incentive employees.

106.    Plaintiffs worked primarily as selectors, which involved selecting (i.e. picking) products for delivery to customers.

107.    Defendant C&S informed Plaintiffs that as selectors, they would be paid a "piece-rate" based on the pieces "picked." Defendant disclosed that the rate of pay for selectors was ten cents (10¢) per case (i.e. "piece") picked.

108.    Defendant C&S told Plaintiffs that when they were not actually picking, but performing other tasks, Plaintiffs would be paid their 8-Week average, which was calculated based on their piece-rate work.

109.    Without notice, C&S arbitrarily changed the "rate of pay" of Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the New York Subclass. C&S unilaterally reduces incentive employees' wage rates on a regular basis.

110.    While encouraging employees to pick as many pieces as possible per hour to increase their 8-Week average rate for picking, C&S arbitrarily and without notice, reduces an employee's rate to $9 an hour instead of paying the 8-Week average. That means, after employees work diligently to increase their 8-Week average piece-rate to a rate as high as $18 per hour (or more), C&S arbitrarily drops their rate to a "utility rate" of $9 per hour for no reason. Employees only discover this unlawful reduction after they receive their paycheck.

111.    By unilaterally reducing employees' wage rates on an arbitrary

basis and failing to pay them at their agreed upon wage rate, C&S has violated and continues to violate N.Y. Labor Law § 191.

112.   As a result of C&S' failure to record, report, credit, and/or furnish to Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the New York Subclass, their respective wage and hour records showing all wages earned and due for all work performed, C&S failed to make, keep, preserve, and/or furnish such records in violation of N.Y. Labor Law § 195.

113.   As a result of C&S' unlawful acts, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez have suffered damages by being denied wages earned and due in accordance with N.Y. Labor Law § 190 et seq. and 12 NYCRR § 142-2.1 et seq.

114.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and members of the prospective New York Subclass, seek damages in the amount of the respective unpaid wages earned and due during the six years previous to commencing this action, as provided by N.Y. Labor Law §§ 191, 198 and 663, and such other legal and equitable relief, including attorneys' fees and costs, as the Court deems just and proper.

## COUNT IV

### FAILURE TO PAY AGREED WAGE RATE
(Multi-State Labor Law Claims in California, Cal. Labor Code §§ 204(b) and
223; Connecticut, C.G.S.A. §§ 31-71b & 31-71f; Hawaii, H.R.S. §§ 388-2 &
388-7; Maryland, Md Labor & Emply. §§ 3-502 & 3-504; Massachusetts,
M.G.L.A. 149 §§ 148 & 157(a); New Hampshire, N.H.R.S. §§ 275:43 & 275:49;
New Jersey, N.J.S.A. §§ 34:11-4.2 & 34:11-4.6; Ohio, R.C. §§ 4111.10 &
4113.15; Pennsylvania, 43 P.S. § 260.4; South Carolina, S.C.S.A. §§ 41-10-40
& 41-10-30 ; Tennessee, T.C.A. § 50-2-101; Vermont, 21 V.S.A. § 342,
Brought by All Plaintiffs on Behalf of Themselves
and All Members of the Class)

115.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of

themselves and all members of the class repeat and incorporate by reference all

other paragraphs of the complaint as if fully set forth herein.

116.   In violation of state labor laws, C&S has willfully and intentionally

engaged in a widespread pattern and practice of failing to pay incentive-pay

employees at agreed upon wage rates in states where C&S operates.  These

states include Alabama, California, Connecticut, Hawaii, Maryland,

Massachusetts, New Hampshire, New Jersey, Ohio, Pennsylvania, South

Carolina, Tennessee, and Vermont.

117.   Labor laws in these states uniformly require an employer, such as

C&S, to notify employees of their rate of pay at the time of hire.  See CA Labor

Code §§ 204(b) and 223; CT Gen. Stat. Ann. §§ 31-71b and 31-71f; HI H.R.S. §§

388-2 and 388-7; MD Labor & Emply. §§ 3-502 and 3-504; MA M.G.L.A. 149 §§

148 and 157(a); NH Rev. Stat. §§ 275:43 and 275:49; NJ Stat. §§ 34:11-4.2 and

34:11-4.6; OH R.C. §§ 4111.10 and 4113.15; PA 43 P.S. § 260.4; S.C.S.A. §§

41-10-40 and 41-10-30; TN T.C.A. § 50-2-101a; VT 21 V.S.A. § 342.

118.   State labor laws also require an employer, such as C&S, to pay all

wages owed to an employee at the agreed upon rate when due.  Despite these requirements, C&S violates and continues to violate state labor laws.

119.    At the time of hire, C&S notified Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the class of their "rate of pay" as piece-rate incentive-pay employees.  Defendant C&S informed Plaintiffs that as selectors, they would be paid a "piece-rate" based on the pieces "picked."

120.    For incentive employees working as selectors, like Plaintiffs, Defendant disclosed that the rate of pay was ten cents (10¢) per case (i.e. "piece") picked.

121.    Defendant told Plaintiffs that when they were not actually picking, but doing other work, Plaintiffs would be paid their 8-Week average piece-rate.

122.    Without notice, C&S arbitrarily changed the "rate of pay" of Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the class.  C&S unilaterally reduces incentive employees' wage rates on a regular basis.

123.    While encouraging employees to pick as many pieces as possible per hour to increase their 8-Week average, C&S arbitrarily and without notice, reduces an employee's rate for piece-rate work. That means, after employees work diligently to increase their 8-Week piece-rate average to a rate as high as $18 per hour (or more), C&S arbitrarily drops their rate to a "utility rate" of $9 per hour for no reason.  Employees only discover this unlawful reduction after they receive their paycheck.

124.    By unilaterally reducing employees' wage rates on an arbitrary basis and failing to pay them at their agreed upon wage rate, C&S has violated

32

and continues to violate state labor laws.

125.    As a result of C&S' failure to record, report, credit, and/or furnish to Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the class their respective wage and hour records showing all wages earned and due for all work performed, C&S failed to make, keep, preserve, and/or furnish such records in violation of state labor laws.

126.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and members of the prospective class, seek damages in the amount of the respective unpaid wages earned and due during the applicable limitations period prior to commencing this action, and such other legal and equitable relief, including attorneys' fees and other costs, as the Court deems just and proper.

## COUNT V

### FAILURE TO PAY ALL ACTUAL TIME WORKED
(New York State Labor Law Claims,
N.Y. Labor Law §190, et seq. and 12 NYCRR 142-2.1,
Brought by Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez
on Behalf of Themselves and All Members of the New York Subclass)

127.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez individually and on behalf of all members of the New York Subclass repeat and incorporate by reference all other paragraphs of the complaint as if fully set forth herein.

128.    In violation of N.Y. Labor Law § 190, et seq., C&S has willfully and intentionally engaged in a widespread pattern and practice of failing to pay incentive-pay employees for all hours actually worked.

129.    C&S knowingly coerces its employees to work "off-the-clock," i.e. not recording all hours worked, in order to increase employees' 8-Week average

rate.

130.   C&S fails to pay employees for all hours worked by:

a.   penalizing and punishing employees with a lower hourly rate if they refuse to work "off-the-clock."  (As an example, if two employees pick 160 pieces in 10 hours, but worker #1 is coerced into clocking 8 hours, he will have a higher hourly rate than worker #2 who clocks the 10 hours actually worked.)

b.   rewarding employees with preferable "load sheets" containing the largest number of pieces if the employees arrive at work at least ½ hour before they clock-in, or receive their first "load sheet."

c.   rewarding employees with higher piece-rate wages per hour if the employees work after they clock-out, or return their last "load sheet."

d.   rewarding employees with higher piece-rate wages if those employees do not take mandatory meal periods.

131.   As a result of C&S' failure to pay wages earned and due to its incentive-pay employees who worked "off-the-clock," and were, are or will be employed by C&S in the State of New York, C&S has deprived Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and the members of the New York Subclass of full and timely payment under the law in violation of N.Y. Labor Law § 191 et seq. and 12 NYCRR § 142-2.1 et seq.

132.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of

34

themselves and members of the prospective New York Subclass, seek damages

in the amount of the respective unpaid wages earned and due during the six

years previous to commencing this action, as provided by N.Y. Labor Law §§

191, 198 and 663, and such other legal and equitable relief, including attorneys'

fees and other costs, as the Court deems just and proper.

## COUNT VI

### FAILURE TO PAY ALL ACTUAL TIME WORKED
**(Multi-State Labor Law Claims in California,, Cal. Labor Code §§ 204b and
223; Connecticut, C.G.S.A. § 31-71b; Hawaii, H.R.S. § 388-2; Maryland, Md
Labor & Emply. § 3-502; Massachusetts, M.G.L.A. 149 § 148; New
Hampshire, N.H.R.S. § 275:43; New Jersey, N.J.S.A. § 34:11-4.2; Ohio, R.C.
§§ 4111.10, 4113.15; Pennsylvania, 43 P.S. § 260.3; South Carolina, S.C.S.A.
§ 41-10-40, Tennessee, T.C.A. § 50-2-101c; Vermont, 21 VSA § 342 ,
Brought by All Plaintiffs on Behalf of Themselves
and All Members of the Class)**

133.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of

themselves and all members of the class repeat and incorporate by reference all

other paragraphs of the complaint as if fully set forth herein.

134.    In violation of the labor laws of Alabama, California, Connecticut,

Hawaii, Maryland, Massachusetts, New Hampshire, New Jersey, Ohio,

Pennsylvania, South Carolina, Tennessee, and Vermont, C&S has willfully and

intentionally engaged in a widespread pattern and practice of failing to pay

incentive-pay employees for all hours worked in states where C&S operates.

135.    C&S knowingly coerces its employees to work "off-the-clock," i.e.

not recording all hours worked, in order to increase employees' 8-week average

rate.

136.    C&S fails to pay employees for all hours worked by:

a.  penalizing and punishing employees with a lower hourly rate if they refuse to work "off-the-clock." (As an example, if two employees pick 160 pieces in 10 hours, but worker #1 is coerced into clocking 8 hours, he will have a higher hourly rate than worker #2 who clocks the 10 hours actually worked.)

b.  rewarding employees with preferable "load sheets" containing the largest number of pieces if the employees arrive at work at least ½ hour before they clock-in, or receive their first "load sheet."

c.  rewarding employees with higher piece-rate wages per hour if the employees work after they clock-out, or return their last "load sheet."

d.  rewarding employees with higher piece-rate wages if those employees do not take mandatory meal periods.

137.   As a result of C&S' failure to pay wages earned and due to its incentive-pay employees who worked "off the clock," and were, are or will be employed by C&S, C&S has deprived Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and the members of the class of full and timely payment under the law in violation of state labor laws.

138.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez, on behalf of themselves and members of the prospective class, seek damages in the amount of the respective unpaid wages earned and due during the applicable limitations period prior to commencing this action, and such other legal and equitable relief,

including attorneys' fees and other costs, as the Court deems just and proper.

## COUNT VII

### FAILURE TO PAY ALL ACTUAL TIME WORKED
### (FLSA Claims, 29 U.S.C. §§201, et seq.,
### Brought by All Plaintiffs on Behalf of Themselves and All Members of the
### Nationwide FLSA Collective Plaintiffs)

139.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez allege and incorporate by reference the preceding paragraphs of the complaint as if fully alleged herein.  In this Count, "Plaintiffs" refers to Named Plaintiffs Armando Hernandez, Wands, Michael Rodrigues, and Joe Alvarez and any class members who file individual consents to sue in this action.

140.   Because C&S willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

141.   As alleged above in Counts V and VI, C&S has consistently failed to pay Plaintiffs and others similarly situated for all hours worked as required by 29 U.S.C. §201-219.  C&S violated and continues to violate the FLSA.

142.   C&S' policy and practice of encouraging employees to work "off-the-clock" is specifically prohibited by 29 C.F.R. §758.13, which requires employers to compensate employees for any work an employee is "suffered or permitted" to perform. Plaintiffs, and others similarly situated, were denied rightful compensation for time spent before and after assigned shifts in violation of the FLSA.  These tasks were essential for the primary employment and required by C&S.  C&S was obligated to pay compensation for these tasks under 29 U.S.C. § 254(a)(2).

143.   Because C&S has consistently and intentionally violated FLSA provisions that require compensating employees for all hours works, it has also consistently underestimated employee overtime and denied employees of rightful overtime wages as discussed in Count X.

144.   C&S has not made a good faith effort to comply with the FLSA with respect to its failure to pay to Plaintiffs and others similarly situated for all hours worked.

145.   As a result of unlawful acts of C&S, Plaintiffs and all similarly situated current and former employees have been deprived of earned wages in amounts to be determined at trial.  They are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT VIII

**FAILURE TO PAY OVERTIME DUE**
**(New York State Labor Law Claims, N.Y. Labor Law §190, et seq.**
**and 12 NYCRR 142-2.1,**
**Brought by Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on Behalf**
**of Themselves and All Members of the New York Subclass)**

146.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez allege and incorporate by reference the preceding allegations of this complaint as if fully alleged herein.

147.   Under applicable regulations and wage orders issued by the New York Department of Labor (12 NYCRR § 142-2.2 (2004)), "an employer shall pay an employee overtime at a wage rate of one and one-half times the employee's regular rate."

148. As alleged in previous counts, C&S has wrongfully and artificially lowered Plaintiffs and the New York Subclass' "regular rate of pay" by deducting wages. C&S has underpaid and/or failed to pay Plaintiffs and the New York Subclass the full amount of overtime wages for hours worked in excess of a forty-hour work week. By improperly failing to fully compensate its New York State employees for overtime work, C&S has violated and continues to violate 12 NYCRR § 142-2.2.

149. As a result of C&S' unlawful acts, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez have suffered damages by being denied overtime wages earned and due in accordance with 12 NYCRR § 142-2.2.

## COUNT IX

### FAILURE TO PAY OVERTIME DUE
(Multi-State Labor Law Claims in California, Cal. Labor Code § 510; Connecticut, C.G.S.A. §§ 31-76c & 31-76f; Hawaii, H.R.S. §387-3; Maryland, Md Labor & Emply. §§ 3-415 & 3-420; Massachusetts, M.G.L.A. 151§1a-b; New Jersey, N.J.S.A. § 34:11-56a4; Ohio, OH R.C. §4111.03; Pennsylvania, 43 P.S. §333.104(c); Vermont, 21 V.S.A. §384, Brought by All Plaintiffs on Behalf of Themselves and All Members of the Class)

150. Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez allege and incorporate by reference the preceding allegations of this complaint as if fully alleged herein.

151. In violation of state labor laws, C&S has willfully and intentionally engaged in a widespread pattern and practice of unlawfully deducting and reducing wages and hours of its employees and thereby underestimating their rightful overtime wages in states where C&S operates. These states include

Alabama, California, Connecticut, Hawaii, Maryland, Massachusetts, New

Hampshire, New Jersey, Ohio, Pennsylvania, South Carolina, Tennessee, and

Vermont.

152.    Labor laws in these states expressly and implicitly require an

employer to pay an employee overtime at a wage rate of one and one-half times

the employee's regular rate.  See CA Labor Code §§ 510; CT Gen. Stat. Ann. §§

31-76c & 31-76f; HI H.R.S. §387-3; MD Labor & Emply. §§ 3-415 and 3-420; MA

M.G.L.A. 151§1a-b; NJ Stat. § 34:11-56a4; OH R.C. §4111.03; PA 43 P.S.

§333.104(c); VT 21 V.S.A. §384.

153.    As alleged in previous counts, C&S has wrongfully and artificially

lowered Plaintiffs and the class "regular rate of pay" by deducting wages.  C&S

has underpaid and/or failed to pay Plaintiffs and the class the full amount of

overtime wages for hours worked in excess of a forty-hour work week.  By

improperly failing to fully compensate its employees for overtime work, C&S has

violated and continues to violate state labor laws and regulations.

154.    As a result of C&S' unlawful acts, Plaintiffs Hernandez, Wands,

Rodrigues, and Alvarez have suffered damages by being denied overtime wages

earned and due in accordance with state labor laws and regulations.

## COUNT X

**FAILURE TO PAY OVERTIME DUE**
**(FLSA Claims, 29 U.S.C. §§ 201, et seq., Brought by All Plaintiffs on Behalf**
**of Themselves and All Members of the Nationwide FLSA Collective**
**Plaintiffs)**

155.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez allege and

incorporate by reference the preceding allegations of this complaint as if fully

alleged herein.  In this Count, "Plaintiffs" refers to Named Plaintiffs Armando

Hernandez, Wands, Michael Rodrigues, and Joe Alvarez and any class members

who file individual consents to sue in this action.

     156.   Because C&S willfully violated the FLSA by failing to pay

employees overtime wages, a three-year statute of limitations applies to such

violations, pursuant to 29 U.S.C. § 255.

     157.   C&S has willfully engaged in a widespread pattern and practice of

violating the provisions of the FLSA, as detailed herein, by not paying Plaintiffs,

as well as all others similarly situated, for proper overtime wages in accordance

with § 207 of FLSA.

     158.   As a result of C&S' violations of the FLSA, Plaintiffs, as well as all

others similarly situated, have also suffered damages by being denied overtime

wages in accordance with § 206 and § 207 of the FLSA.

     159.   C&S has not made a good faith effort to comply with the FLSA with

respect to its failure to provide overtime pay to Plaintiffs and others similarly

situated.

     160.   As a result of unlawful acts of C&S, Plaintiffs and all similarly

situated employees have been deprived of overtime compensation in amounts to

be determined at trial.  They are entitled to recover such amounts, liquidated

damages, prejudgment interest, attorneys' fees, costs, and other compensation

pursuant to 29 U.S.C. § 216(b).

## COUNT XI

**FAILURE TO PAY SPREAD OF HOURS COMPENSATION**
**(New York State Labor Law Claims, N.Y. Labor Law §190, et seq.**
**and 12 NYCRR 142-2.4,**
**Brought by Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on Behalf**
**of Themselves and All Members of the New York Subclass)**

161.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and all members of the New York Subclass repeat and incorporate by reference all other paragraphs of the complaint as if fully set forth herein.

162.    12 NYCRR § 142-2.4 requires an employer, such as C&S, to pay an employee an extra hour of pay for each hour in which the employee's "spread of hours" exceeds a 10-hour shift. The relevant spread is the time between the beginning and the end of employee's work day including all working time and time off for meals and time off duty, as defined by 12 NYCRR § 142-2.18.  If that spread exceeds ten hours, the employer owes that employee one hour of additional pay for each hour in excess of (10) ten.

163.    In violation of 12 NYCRR § 142-2.4, C&S has willfully and intentionally engaged in a widespread pattern and practice of failing to pay spread-of-hours compensation to its employees in New York State.

164.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and the members of the New York Subclass consistently worked a spread of hours in excess of ten (10) hours per day.  However, C&S has never paid these employees an extra hour of pay on each day on which they worked over ten (10) hours.  C&S violated and continues to violate 12 NYCRR § 142-2.4.

165.    C&S has also failed to establish, maintain and preserve records of

the number of hours worked daily and weekly, including the time of arrival and departure of each employee working a split shift or spread of hours exceeding ten (10) hours in violation of 12 NYCRR § 142-2.6(4).

166.   As a result of C&S' failure to record, report, credit, and furnish to each of its incentive-pay employees who were, are or will be employed by C&S in the State of New York, including Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the New York Subclass, their respective wage and hour records showing all wages earned and due for all work performed, C&S failed to make, keep, preserve, and furnish such records in violation of N.Y. Labor Law § 195.

167.   As a result of C&S' unlawful acts, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez have suffered damages by being denied wages earned and due in accordance with N.Y. Labor Law § 190 et seq. and 12 NYCRR § 142-2.1 et seq.

168.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of themselves and members of the prospective New York Subclass, seek damages in the amount of the respective unpaid wages earned and due during the six years previous to commencing this action, as provided by N.Y. Labor Law §§ 191, 198 and 663, and such other legal and equitable relief, including attorneys' fees and costs, as the Court deems just and proper.

## COUNT XII

### FAILURE TO PAY SPREAD OF HOURS COMPENSATION
**(California State Labor Law Claims, Cal. Labor Code §§ 226 and 510 and Brought by Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on Behalf of All Members of the California Subclass)**

169.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of all members of the California Subclass repeat and incorporate by reference all other paragraphs of the complaint as if fully set forth herein.

170.   Cal. Labor Code § 510 requires an employer, such as C&S, to pay an employee at the overtime rate of one and a half times normal compensation when an employee's "spread of hours" exceeds a 8-hour shift; the statute requires compensation at twice the normal rate when the "spread of hours" exceeds a 12-hour shift. The relevant spread is the time between the beginning and the end of employee's work day including all working time and time off for meals and time off duty.  If that spread exceeds eight hours, the employer owes that employee compensation at one and a half times the normal hourly rate for each hour in excess of eight.  If that spread exceeds twelve hours, the employer owed that employee compensation at twice the normal hourly rate for each hour in excess of twelve.

171.   In violation of Cal. Labor Code § 510, C&S has willfully and intentionally engaged in a widespread pattern and practice of failing to pay spread-of-hours compensation to its employees in California State.

172.   Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and the members of the California Subclass consistently worked a spread of hours in excess of eight  hours per day and at certain times in excess of twelve hours per

day.  However, C&S has never paid these employees at the appropriate higher rate on days in which they worked over eight (or twelve) hours.  C&S violated and continues to violate Cal. Labor Code § 510.

173.    C&S has also failed to establish, maintain and preserve records of the number of hours worked daily and weekly, including the time of arrival and departure of each employee working a split shift or spread of hours exceeding eight hours in violation of Cal. Labor Code § 226.

174.    As a result of C&S' failure to record, report, credit, and furnish to each of its incentive-pay employees who were, are or will be employed by C&S in the State of California, including Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez and all members of the California Subclass, their respective wage and hour records showing all wages earned and due for all work performed, C&S failed to make, keep, preserve, and furnish such records in violation of Cal. Labor Code § 226.

175.    As a result of C&S' unlawful acts, Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez have suffered damages by being denied wages earned and due in accordance with Cal. Labor Code § 510.

176.    Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez on behalf of members of the prospective California Subclass, seek damages in the amount of the respective unpaid wages earned and due during the six years previous to commencing this action, as provided by Cal. Labor Code §§ 226 and 510, and such other legal and equitable relief, including attorneys' fees and costs, as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all members of the proposed class and subclass pray that the Court issue relief as follows:

A.      Certifying this action as a class action on behalf of the Multi-State class, the New York Subclass, and the California Subclass, respectively;

B.      Under Rule 23, designating Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez as representatives of the Multi-State class, the New York Subclass, and the California Subclass.

C.      Designating Plaintiffs Hernandez, Wands, Rodrigues, and Alvarez as representatives of the FLSA Collective Action;

D.      Designating this action as a collective action on behalf of the proposed FLSA Collective Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. §216(b), and a tolling of the statute of limitations on the claims of all members of the FLSA Opt-In Class from the date of the original complaint was filed until the class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Plaintiffs;

E.      Awarding compensatory and punitive damages and other statutory penalties to be paid by C&S, except with regard to the New York Subclass, where Plaintiffs seek only compensatory damages;

46

F.      Awarding costs of action incurred herein, including reasonable attorneys' fees and expert fees;

G.      Awarding pre-judgment and post-judgment interest, as provided by law; and

H.      Ordering such other and further legal and equitable relief as this Court deems, necessary, just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: April 6, 2006

Respectfully submitted,

By:_____
Steven L. Wittels (SLW-8110)
Jeremy Heisler (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, New York 10022
Telephone: (646) 723-2947
Facsimile:  (646) 723-2948
swittels@nydclaw.com
www.nydclaw.com

David W. Sanford, D.C. Bar No. 457933
Janette Wipper, D.C. Bar No. 467313
**SANFORD WITTELS & HEISLER, LLP**
2121 K Street, NW, Suite 700
Washington, D.C. 20037
Telephone: (202) 942-9124
Facsimile: (202) 628-8189
dsanford@nydclaw.com
www.nydclaw.com

*Attorneys for Plaintiffs and the Class*