## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————————

ARMANDO HERNANDEZ, MICHAEL WANDS,
JOE ALVAREZ, BALMORES ORTIZ, DAVID
RODRIGUEZ, LUIS TEJADA, CHAD GOURLEY,
JOSEPH GASDIA, PAUL GASDIA, ERIC
CLEVELAND, JASON DIXON, ERIC BOLISKI,
ERIC MAHANEY, RICHARD PITNEY, ELIJAH
NAYLOR, AND SEAN NEARY, Individually and on
Behalf of All Others Similarly Situated, As Class
Representatives,

                Plaintiffs,

        v.

C&S WHOLESALE GROCERS, INC., RICHARD
"RICK" B. COHEN, and C&S WHOLESALE
GROCERS, INC., as Plan Administrator,

              Defendants.

———————————————————————

06 CV 2675 (CLB) (MDF)

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF

Of Counsel:
Steven L. Wittels
David W. Sanford
Jeremy Heisler
Andrew Melzer

**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
(646) 723-2947
1666 Connecticut Ave, N.W., Suite 310
Washington, D.C., 20009
(202) 742-7780

*Lead Class Counsel for Plaintiffs and the Class*

MADSEN, PRIESTLY & PARENTAU, LLC
44 Capitol Avenue, Suite 201
Hartford CT, 06106
(860) 246-2466
*Co-Counsel for Plaintiffs and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………..…………iv

PRELIMINARY STATEMENT …………………………………………………...............1

BACKGROUND FACTS AND PROCEDURAL HISTORY …………………….....…........3

ARGUMENT ……………………………………………………………………… …3

POINT I: THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE, AND SHOULD BE APPROVED IN ALL RESPECTS ……………………3

A.  THE LAW FAVORS CLASS ACTION SETTLEMENTS …..……………...............3

B.  THE SECOND CIRCUIT'S STANDARD FOR APPROVAL
OF CLASS ACTION SETTLEMENTS UNDER RULE 23(e)……………..………4

1. Substantive Fairness…………..……………...….…………………..………5

2. Procedural Fairness…………………..……...…………………..………..6

C.  UNDER THE *GRINNELL* TEST FOR EVALUATING CLASS ACTION
SETTLEMENTS, THE SUBSTANTIVE TERMS OF THE SETTLEMENT
ARE FAIR, REASONABLE, AND ADEQUATE…………………………………6

1.  The Complexity, Expense and likely Duration of this Litigation Favor Final
Approval……..……….................................................................................6

2.  The Reaction of the Class to the Settlement Favors Final Approval………….7

3.  The Stage of the Proceedings and the Amount of Discovery Completed Favor
Final Approval…………………………………...………………....8

4,5,6. Risks of Class Prevailing—Establishing Liability, Damages and Maintaining
the Class Action Through Trial—Favor Final
Approval.......................................................................................9

8,9. The Settlement Fund Is Clearly Reasonable In Light of the Best Possible
Recovery and All Attendant Risks of Litigation……..……………………..10

D.  THE SETTLEMENT IS PROCEDURALLY FAIR AS IT IS A PRODUCT OF
ARM'S LENGTH NEGOTIATIONS AMONG EXPERIENCED COUNSEL,
INFLUDING HARD-FOUGHT MEDIATIONS BEFORE AN EXPERIENCED
MEDIATOR AND FORMER FEDERAL JUDGE….................................................12

1. Experienced Counsel Represented Both Parties in this Case....………….……13

2. The Settlement Was Negotiated by Experienced Counsel After Two
   Full-Day, In-Person Mediations Before Judge Politan, a Mediator With
   Significant Experience in Class Action Settlements.………….…………....…13

POINT II: PLAINTIFFS' APPLICATION FOR $4390,826.23 IN ATTORNEYS' FEES
AND $694,465.97 IN EXPENSES SHOULD BE APPROVED....…………...........................14

A. THE APPLICATION.……………………………….………………………….14

B. THE RELEVANT FACTORS.……………………..………….….…………..14

C. A REVIEW OF THE RELEVANT FACTORS SUPORTS COUNSEL'S
   FEE APPLICATION.…………………………………………………………..15

   1. The Litigation Has Conferred Substantial Benefits on the Class as a
      Consequence of Counsel's Efforts.……………………………..……...15

   2. The Efforts of Plaintiffs' Counsel.……………………………….…..............15

D. THE PERCENTAGE-OF-FUND AND LODESTAR APPROACHES IN
   EVALUATING CLASS ACTION ATTORNEY'S FEES.………….…...………16

   1. The $4,390,826.23 Attorneys' Fee Request Represents Approximately
      31% Percent of the Available Settlement Benefit and Is Well
      Within the Range of Reasonableness.…………….…..…………….…..............17

   2. Analysis Under the Lodestar School.……………………………………19

      (a) Counsel's Lodestar is Based Upon Reasonable Rates and Hours
          Expended.………………………….…………………………………..19

      (b) The Proposed Multiplier is Supported By Precedent
          and Public Policy.………………………………………………………21

POINT III: PLAINTIFFS' APPLICATION FOR INCENTIVE AWARDS IS
SUPPORTED BY PRECEDENT AND THE PUBLIC INTEREST AND
SHOULD BE APPROVED.……………………………….……………………..……...21

A. COURTS HAVE OFTEN AWARDED INCENTIVE PAYMENTS IN
   SIMILAR CASES BASED UPON THE EFFORTS ASSUMED BY
   PLAINTIFFS AND BURDENS AND RISKS INCURRED..……………………22

B. COURTS HAVE AWARDED INCENTIVE PAYMENTS IN AMOUNTS
   FAR GREATER THAN THOSE CONTEMPLATED HERE.……………............23

POINT IV: ADEQUATE NOTICE HAS BEEN PROVIDED TO THE CLASS…..................24

POINT V- CERTIFICATION OF THE SETTLEMENT CLASSES IS
APPROPRIATE………………………………………………………………….......24

CONCLUSION…………………………………………………………………………25

## TABLE OF AUTHORITIES

### Cases

Aguayo v. Oldenkamp Trucking, No. F04-6279 AWI LJO, 2006 WL 3020943
(E.D.Cal. Oct. 17, 2006) ........................................................................................................ 23

Bano v. Union Carbide Corp., 273 F.3d 120 (2d Cir.2001) .................................................... 4

Baron v. Commercial & Indus. Bank of Memphis, [1979-1980 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 97,132 (S.D.N.Y. 1979) .......................................................... 18

Becher v. Long Island Lighting Co., 64 F.Supp.2d 174 (E.D.N.Y. 1999) .......................... 18

Beck v. Boeing Co., No 00-CV-301P (W.D.Wash. Oct. 8, 2004) ....................................... 23

Beech Cinema Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195 (S.D.N.Y. 1979) .... 18

Behrens v. Wometco Enterprises, 118 F.R.D. 534, 542 (S.D. Fla. 1988),
aff'd, 899 F.2d 21 (11th Cir. 1990) ..................................................................................... 11

Berger v. Xerox Corp. Ret. Income Guar. Plan, No. 00-584-DRH, 2004 WL 287902
(S.D. Ill. Jan. 22, 2004) ...................................................................................................... 19

Binetti v. Washington Mutual Bank, No. 06 Civ. 1732 (KMK) (S.D.N.Y. Apr. 15, 2008) ............. 19

Borcea v. Carnival Corp., 238 F.R.D. 664 (S.D.Fla. 2006) ................................................. 12

Brody v. Catell, 2007 N.Y, Misc. LEXIS 4647 (Sup. Ct. Kings Co. 2007)........................ 20

Cagan v. Anchor Savings Bank FSB, 1990 WL 73423 (E.D.N.Y. May 22, 1990).......................... 11

Camp v. Progressive Corp., No. Civ.A. 01-2680, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ... 23

Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.,
504 F.3d 229 (2d Cir. 2007)................................................................................................ 17

Chatelain v. Prudential-Bache Properties, Inc., 805 F. Supp 209 (S.D.N.Y. 1992) ................ 5, 12, 13

Chiaramonte v. Pitney Bowes, Inc., No. 06 CV 1507 JM (NLS), 2008 WL 510765 ...........................
(S.D. Cal. Feb.25, 2008)…………………………………………………………………… ...11, 23

Churchill Vill. v. G.E., 361 F.3d 566 (9th Cir. 2004), cert. denied, 125 S. Ct. 556 (2004)............... 24

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir.1974) ......................................... 5, 11, 14, 20

Cohen v. Apache Corp., No. 89 CIV. 0076 (PNL),  1993 U.S. Dist. LEXIS 5211
 (S.D.N.Y. Apr. 21, 1993) ........................................................................................ 18

Cosgrove v. Sullivan, 759 F.Supp. 166 (S.D.N.Y. 1991).......................................... 16

Craft v. County of San Bernadino, No. EDCV05-00359 SGL, 2008 WL 916965
 (C.D. Cal. Apr. 1, 2008) ..................................................................................16, 20

Does I v. The Gap, Inc., No. CV-01-0031, 2003 WL 22997250, at *1 & n.1
 (D.N.Mar.I. Sept. 11, 2003) ................................................................................. 12

Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240
 (S.D. Ohio 1991). .................................................................................................. 23

Fears v. Wilhelmina Model Agency, Inc., No. 02-Civ.4911(HB),
 2005 U.S. Dist. LEXIS 7961 (S.D.N.Y. May 5, 2005) ....................................... 22

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005)......................... 7, 8, 14, 22

Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452(RLE),
 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ................................................. passim

Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862
 (N.D.Cal. Jan. 26, 2007)....................................................................................11, 22

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)...................... 14, 15, 16, 17

Grant v. Bethlehem Steel Corp., 823 F.2d 20 (2d Cir. 1985)................................. 4

Green v. Emerson Ltd., [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263
 (S.D.N.Y. 1987) ..................................................................................................... 18

Iberte Capital Group v. Capwill, No. 5:99-CV-818,
 2007 U.S. Dist. LEXIS 64869 (N.D. Ohio Aug. 29, 2007) .............................. 23

In re Allstar Sec. Litig., No. 88CIV9282 (PKL),
 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991)................................. 18

In re AOL Time Warner ERISA Litig., No. 02 Civ. 8853 SWK,
 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ................................................13, 17

In re ATI Techs., Inc. Sec. Litig., 2003 U.S. Dist. LEXIS 7062 (E.D. Pa., Apr. 28, 2003).............. 17

In re Austrian and German Bank Holocaust Litig., 80 F.Supp.2d 164 (S.D.N.Y.2000),
 aff'd, 236 F.3d 78 (2d Cir. 2001)............................................................................ 6

In re Buspirone Antitrust Litig., No. 01-MD-1410 (S.D.N.Y. Apr. 11, 2003) ................................... 16

In re Charter Commc'ns Inc. Sec. Litig., No. MDL 1506, 4:02-CV-1186 CAS,
    2005 WL 4045741 (E.D.Mo. June 30, 2005) ................................................................................ 16

In re CMS Energy ERISA Litig., No. 02-72834, 2006 WL 2109499
    (E.D. Mich. June 27, 2006) .......................................................................................................... 19

In re Computron Software, Inc., Securities Litigation, 6 F. Supp.2d 313 (D.N.J. 1998) ................. 15

In re Crazy Eddie Securities Litig., 824 F. Supp. 320 (E.D.N.Y. 1993) ...................................... 11, 18

In Re Domestic Air Transportation Antitrust Litig., 148 F.R.D. 297 (N.D. Ga. 1993) .................... 10

In re Dun Bradstreet Customer Serv. Litig., 130 F.R.D. 366 (S.D. Ohio 1990) .............................. 23

In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240(CM),
    2007 WL 2230177 (S.D.N.Y. July 27, 2007). ......................................................................... passim

In re Gilat Satellite Networks, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675
    (E.D.N.Y. Sept. 18, 2007) ............................................................................................................ 20

In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) ................................ 6

In re Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D. 588 (S.D.N.Y. 1992) ...................... 11, 18

In re Ira Haupt & Co., 304 F.Supp. 917 (S.D.N.Y.1969) ................................................................... 9

In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002). ............... 16, 18

In re Medical X-Ray Film Antitrust Litig., No. CV-93-5904,
    1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) .............................................................. 18

In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 46 (S.D.N.Y. 1993) .............................. 4, 6

In re NTL Inc. Securities Litigation, 2007 U.S. Dist. LEXIS 13661, 2007 WL 1294377 (S.D.N.Y.
    May 2, 2007) ................................................................................................................................ 20

In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104 (S.D.N.Y.1997) ...................................... 9, 12

In re Prudential Inc. Securities Lip. Lit., 1995 WL 798907 (S.D.N.Y. 1995) .................................. 11

In re RJR Nabisco Inc. Sec. Litig., No. 88 Civ. 7905(MBM),
    1992 WL 210138 (S.D.N.Y. Aug, 24, 1992) ................................................................................ 16

In re Sony SXRD Rear Projection Television Class Action Litig.,
   No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008). ......................................... 6

In re Sunrise Security Litig., 131 F.R.D. 450 (E.D. Pa. 1990) ...................................................... 11

In re Twin Lab Corporation Securities Litigation, 187 F. Supp. 2d 80 (E.D.N.Y. 2002) .................... 4

In re Union Carbide Corp. Consumer Products Business Securities Litigation,
   718 F. Supp. 1099 (S.D.N.Y. 1989) ................................................................................. 3, 10, 20

In re Veeco Instruments, Inc. Sec. Litig., No. 05 MDL 0165(CM),
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................................. passim

In re Visa Check/Mastermoney Antitrust Litig., 297 F.Supp.2d 503 (S.D.N.Y. 2003) .............. 16, 21

In re Warner Commc'ns Sec. Litig., 798 F.2d 35 (2d Cir.1986) ............................................. 6

In re Xcel Energy Inc. Sec., Derivative & "ERISA" Litig., 364 F.Supp.2d 980 (D. Minn. 2005) ... 17

Ingram v. The Coca-Cola Co., 200 F.R.D. 685 (N.D. Ga. 2001) ........................................ 23

Int'l Union v. Ford Motor Co., No. 05-74730, 2006 WL 1984363 (E.D.Mich. July 13, 2006) ....... 10

Joel A. v. Giuliani, 218 F. 3d 132 (2d Cir. 2000) ...................................................... 4

Lenahan v. Sears, Roebuck and Co., No. 02-0045, 2006 WL 2085282
   (D.N.J. July 24, 2006) ..................................................................................... ...12, 19, 23

Malchman v. Davis, 706 F.2d 426 (2d Cir.1983) ...................................................... 4, 6

Maley v. Dale Global Techs. Corp., 186 F.Supp.2d 186 F.Supp.2d 358 (S.D.N.Y. 2002) .....7, 16, 18

Masters v. Wilhemina Model Agency, Inc., 473 F. 3d 423 (2d Circ. 2007) ...................................... 17

Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072 (2d Cir. 1995) ................................... 4

Mehling v. New York Life Ins. Co, 248 F.R.D. 455 (E.D.Pa. 2008) .................................... 19

Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y. 1968) ...................... 11

Paul, Johnson, Laston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989) ............................... 17

Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., 2006 WL 3681138 (E.D.N.Y. 2006) .............. 9

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 CIV 5587(PKL)(RLE),
   2003 U.S. Dist. LEXIS 8239 (S.D.N.Y., May 15, 2003, Leisure, J.) ................. 8, 18, 22

Roberts v. Texaco, Inc., 979 F. Supp. 185, 201 (S.D.N.Y. 1997) ..................................... 16, 19, 22, 23

Romero v. Producers Dairy Foods, Inc., No. 1:05cv0484 DLB,
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007); .................................................................. 23

Rosenberg v. IKON, No. 05-cv-09131-PAC (S.D.N.Y. Jan. 22, 2008) ..................................... 19, 24

Ross v. A.H. Robbins, 700 F. Supp. 682 (S.D.N.Y. 1988) ..................................................... 8

Ruskay v. Waddell, 552 F.2d 392 (2d Cir. 1977), cert. denied, 434 U.S. 911 (1977) ......................... 4

Spann v. AOL Time Warner, No. 02-Civ.-8238-DLC, 2005 WL 1330937
    (S.D.N.Y. June 7, 2005) ............................................................................................ 18

Stokes v. Saga Int'l Holidays, Ltd., 376 F.Supp. 2d 86 (D.Mass. 2005) ........................................ 23

Stop & Shop Supermarket Co. v. Smith Kline Beecham Corp., No. Civ.A. 03-4578,
    2005 WL 1213926 (E.D.Pa. May 19, 2005) .................................................................... 16

Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...... 5, 18

Su v. Elec. Arts, No. 6:05-cv-131-Orl-28JGG, 2007 U.S. Dist. LEXIS 72961
    (M.D.Fla. Aug. 29, 2007) .......................................................................................... 23

Taft v. Ackermans, No. 02 Civ. 7951(PKL), 2007 U.S. Dist. LEXIS 9144 ....................................
    (S.D.N.Y. Jan. 31, 2007) ............................................................................................ 4

Thompson v. Metro. Life Ins. Co., 216 F.R.D. 55 (S.D.N.Y. 2003) ............................................ 10

Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294 (N.D. Cal. 1995) ...................................... 23

Velez v. MaJik Cleaning Serv., Inc., No. 03 Civ. 8698(SAS),
    2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ............................................ 8, 22

Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002) ................................................. 19

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, (2d Cir. 2005) ...................... 4, 6, 16, 17, 24

Weinberger v. Kendrick, 698 F.2d 61 (2d Cir. 1982) ....................................................... 4,11

West v. Circle K Stores Inc., No. Civ. S-04-0438 WBS GGH,
    2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 20, 2006) ................................................ 22

Wright v. Stern, No. 01 Civ. 4437(DC), 2008 WL 2058519 (S.D.N.Y. May 15, 2008) ......... passim

**Other Authorities**

*In Focus: Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide*, National Law Journal,
     December 6, 2004…………………………………………………………………..20

Ruan, Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in
     Employment Discrimination Class Actions, *Employment Rights and Employment Policy
     Journal,* 10 (2006).........................................................................................................…….23

Wright, Miller & Kane, Federal Practice and Procedure § 1803.1 (3d ed. 2008)……….......17

**PRELIMINARY STATEMENT**

After over two years of active litigation, massive discovery (including the review and analysis of tens of thousands of documents by Plaintiffs and their expert accountants, BDO Seidman), hard-fought arm's length negotiations, multiple mediation sessions before an experienced mediator, the Honorable Nicholas H. Politan, United States District Court Judge for the District of New Jersey (*retired*), and extensive settlement practice and administration, the parties to this wage and hour class action have reached an arm's length settlement, and that settlement is ready for final court approval.  Named Plaintiffs and Defendants C&S Wholesale Grocers, Inc. and its Chairman & CEO, Richard B. Cohen ("C&S," the "Company," or "Defendants") have agreed to settle this matter by establishing a Maximum Gross Settlement Amount of $14,000,000 for the class of approximately 12,000 current and former employees.  Eligible class members stand to receive cash payments derived by a formula set forth in the Settlement Agreement ("Agreement"), dependent upon the number of weeks worked as an incentive piece-rate worker during the relevant period.  Furthermore, as a result of this litigation, C&S has revised its wage and hour policies in accordance with federal and state labor law, and provided copies of these policies to its current employees.  This wage and hour settlement is significantly more favorable to the class than settlements approved by various courts in similar actions.  (See infra, pp. 11-12).

At least 2,978 class members have submitted claim forms (which in the aggregate contain claims for 303,970 out of the 589,431 weeks worked by the class during the relevant period – or over 50 percent) and will receive payments under the settlement.  In contrast, there have been **zero** objections and only four requests for exclusion.

Plaintiffs Armando Hernandez, Michael Wands, Joe Alvarez, Balmores Ortiz, David Rodriguez, Luis Tejada, Chad Gourley, Joseph Gasdia, Paul Gasdia, Eric Cleveland, Jason Dixon, Eric Boliski, Joseph Gasdia, Paul Gasdia, Eric Mahaney, Richard Pitney, Elijah Naylor and Shawn Neary ("Plaintiffs"), submit this Memorandum of Law in support of their Motion, made under Fed.

R. Civ. P. 23(e), for an order:

    (1)      approving as fair and adequate the class wide settlement of this action;

    (2)      certifying as final the settlement classes described below;

    (3)      approving Plaintiffs' counsel's application for $4,390,826.23 in attorneys' fees and $694,465.97 in expenses;

    (4)      awarding the Named Plaintiffs and other class members who assisted in the litigation "service payments" in amounts designated by the parties, totaling $400,000; and

    (5)      dismissing the action with prejudice.

On February 25, 2008, Judge Charles L. Brieant signed the "Preliminary Approval Order" and preliminarily certified the following classes – as defined in the Settlement Agreement – for purposes of effectuating the settlement: (1)  the "CONNECTICUT STATE LAW CLASS;" (2) the "MARYLAND STATE LAW CLASS;" (3) The "MASSACHUSETTS STATE LAW CLASS;" (4) the "NEW YORK STATE LAW CLASS;" (5) the "PENNSYLVANIA STATE LAW CLASS;" (6) the "VERMONT STATE LAW CLASS;" and (7) the "ERISA CLASS."  The Court further conditionally certified and provisionally approved an opt-in collective action class pursuant to Section 216(b) of the Fair Labor Standards Act.

In the above order, Judge Brieant: (a) preliminarily approved the settlement of this class action as fair, reasonable, and adequate; (b) appointed Sanford Wittels & Heisler, LLP as Lead Class Counsel and Madsen, Prestley & Parenteau, LLC as Co-Class Counsel; (c) directed mail notice be served on class members; and (d) set the date and time for the final fairness hearing on the settlement and related relief.[1]

Since the Court's preliminary approval order, the Claims Administrator has

---

[1] In a Supplemental Order, dated March 17, 2008, Judge Brieant rescheduled the final fairness hearing for July 30, 2008 at 9 a.m.  The case was later reassigned to this Court and the hearing rescheduled to 3 p.m.

mailed the approved notices to just over 12,000 potential class members, fielded over 1,400 telephone calls from class members, and processed and evaluated almost 3,000 incoming claim forms.  (See July 6 Weekly Statistics Report of Claims Administrator, attached as Ex. A to accompanying Certification of Jennifer M. Keough Regarding Mailed Notice and Claims Administration)  Furthermore, the settlement and claims data has been reviewed by a prominent forensic accounting expert from the firm BDO Seidman, Glenn Pomerantz, who has concluded that the settlement provides a substantial benefit to the class members, which presents a fair, reasonable, and adequate resolution of their claims.  (See accompanying Certification of Glenn Pomerantz, CPA, in Support of Final Approval)

These post-approval activities confirm that the settlement achieves a highly favorable result for the class members and is fair and adequate in all respects.  As Plaintiffs demonstrate below and in the Joint Declaration of Plaintiffs' Counsel, the settlement should be granted final approval.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

The Joint Declaration of Plaintiffs' Lead Counsel Steven L. Wittels, Jeremy Heisler, and David W. Sanford gives a detailed description of the facts and litigation history of this suit. Plaintiffs respectfully refer the Court to the Joint Declaration.

### ARGUMENT

### POINT I

### THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED IN ALL RESPECTS.

**A.     THE LAW FAVORS CLASS ACTION SETTLEMENTS.**

In In re Union Carbide Corp. Consumer Products Business Securities Litigation, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989), Judge Brieant reaffirmed the well-established judicial policy

which favors settlement of class actions:

> In evaluating the settlement of complex class actions, the courts have long recognized that such litigation is notably difficult and notoriously uncertain . . . and that compromise is particularly appropriate. **The law favors settlements by the parties rather than by court disposition. . . .** (internal citations omitted)

See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements particularly in the class action context"); Bano v. Union Carbide Corp., 273 F.3d 120, 129-130 (2d Cir. 2001) ("it is axiomatic that the law encourages settlement of disputes"; however, "the public interest in amicable resolution of cases" is even stronger in complex class actions "that consume substantial judicial resources and present unusually large risks for the litigants") (citations omitted).[2]

### B. THE SECOND CIRCUIT'S STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS UNDER RULE 23(e).

In order to approve a settlement, a district court must determine whether the proposed settlement, "taken as a whole, is fair, reasonable, and adequate." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995). See also Joel A. v. Giuliani, 218 F. 3d 132, 138 (2d Cir. 2000); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir. 1987); In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240(CM), 2007 WL 2230177, at *3 (S.D.N.Y. July 27, 2007). Courts in this circuit make that determination based upon "two types of evidence:" (1) substantive and (2) procedural. Weinberger v. Kendrick, 698 F.2d 61, 73-74 (2d Cir. 1982). Substantive evidence includes the "substantive terms of the settlement compared to the likely result of a trial." Malchman v. Davis, 706 F.2d 426, 433 (2d Cir.1983); Weinberger, 698 F.2d at 74

---

[2] Accord: In re Twin Lab Corp. Sec. Litig., 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("Judicial discretion should be exercised in light of the general policy favoring settlement."); Ruskay v. Waddell, 552 F.2d 392, 398 (2d Cir. 1977), cert. den., 434 U.S. 911 (1977); In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 57, 65 (S.D.N.Y. 1993); Taft v. Ackermans, No. 02 Civ. 7951(PKL), 2007 U.S. Dist. LEXIS 9144, at *14 (S.D.N.Y. Jan. 31, 2007) ("Particularly in class actions, there is an overriding public interest in favor of settlement. It is common knowledge that class actions suits have a well deserved reputation as being most complex."); Wright v. Stern, No. 01 Civ. 4437(DC), 2008 WL 2058519, at *6 (S.D.N.Y. May 15, 2008).

(quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424 (1968)). Procedural evidence includes whether the settlement is the product of arm's length negotiations between experienced counsel. Taft v. Ackermans, No. 02 Civ.7951(PKL), 2007 U.S. Dist. LEXIS 9144, at *14-15 (S.D.N.Y. Jan. 31, 2007); Chatelain v. Prudential-Bache Props., Inc., 805 F. Supp 209, 212 (S.D.N.Y. 1992).

Given the prevailing policy in favor of settlements, there is a strong initial presumption that a negotiated settlement is "fair and reasonable;" absent a substantial number of objectors or "evidence of fraud or overreaching, courts have consistently refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) (citations omitted).

### 1. Substantive Fairness

More than three decades ago, the Second Circuit in City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-463 (2d Cir.1974) ("Grinnell") set forth the analytical framework for evaluating the *substantive fairness* of a class action settlement. In determining whether to approve a proposed settlement, a district court should consider the following nine factors:

(1) the complexity, expense, and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement in light of the best possible recovery; and

(9) the range of reasonableness of the settlement in light of all attendant risks of litigation.

### 2. Procedural Fairness

After probing the substantive fairness of a proposed settlement, the district court examines "the negotiating process by which the settlement was reached." Weinberger, 698 F.2d at 74. This process focuses on "the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." Malchman, 706 F.2d at 433 (citing Weinberger, 698 F.2d at 73). Courts have the duty to ensure that the settlement is not the product of collusion. In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir.1986). Importantly, however, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116 (internal citation omitted). See also In re Sony SXRD Rear Projection Television Class Action Litig., No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *5 (S.D.N.Y. May 1, 2008).

### C. UNDER THE *GRINNELL* TEST FOR EVALUATING CLASS ACTION SETTLEMENTS, THE SUBSTANTIVE TERMS OF THE SETTLEMENT ARE FAIR, REASONABLE, AND ADEQUATE.

As stated above, courts evaluate the substantive terms of a settlement based on the nine Grinnell factors. "[N]ot every factor must weigh in favor of settlement; rather, the court should consider the totality of these factors in light of the particular circumstances." In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted). "The weight given to any particular factor will vary based upon the facts and circumstances of the case." Wright v. Stern, No. 01 Civ. 4437(DC), 2008 WL 2058519, at *6 (S.D.N.Y. May 15, 2008).

### 1. The Complexity, Expense and Likely Duration of this Litigation Favor Final Approval

The first factor – the complexity, expense, and likely duration of this case – favors final settlement approval. It is well-settled that class actions are complex. See, e.g., In re Austrian and German Bank Holocaust Litig., 80 F.Supp.2d 164, 174 (S.D.N.Y.2000), aff'd, 236 F.3d 78 (2d Cir.

2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."). Additionally, the costs and burdens of litigation strongly support this Settlement. See In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 46, 48 (S.D.N.Y. 1993) ("Typically, the magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury.").

The prosecution of this action involved complex legal and factual issues and but for the settlement would have also involved in-court discovery disputes, the production and analysis of thousands of additional documents, dozens of depositions, comprehensive expert reports and testimony, and extensive expert discovery. Cf. In re EVCI Sec. Litig., 2007 WL 2230177, at *5. See also Wright, 2008 WL 2058519, at *7; Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008) (further litigation of wage and hour action would be costly and burdensome, including motion practice and potential appeals over class certification, discovery, and a lengthy trial). Furthermore, barring a global resolution, this multi-state action presented a distinct risk of separate proceedings in six jurisdictions.[3] Class Counsel estimates that the litigation is at least two years away from trial. (See Joint Dec. ¶ )

In sum: "Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial" as well as pre- and post-trial motions and appeals. In re EVCI Sec. Litig., supra, at *6 (citations omitted).

2.      **The Reaction of the Class to the Settlement Favors Final Approval**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." Maley v. Dale Global Techs. Corp., 186 F.Supp.2d 186 F.Supp.2d 358, 362-363 (S.D.N.Y. 2002). Lack of

---

[3] Notably, Gilliam involved a single class under the FLSA and New York law while the instant case involves multiple classes under the labor laws of several different states. See also Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (continued litigation of wage and hour action involving 28 class members in a single location entails substantial burdens and costs potentially outweighing future recovery).

objection to a settlement strongly favors judicial approval.  See, e.g., In re EVCI Sec. Litig., 2007 WL 2230177, at *6.  Here, despite 11,700 full-form notices received by the class, no member has objected to the Settlement, and only four individuals (a negligible .034%) have requested exclusion.  Furthermore, approximately 25% of the class members – whose claims represent over 50% of the work weeks eligible for compensation through the settlement – have submitted claims.  As set forth in the Joint Declaration, this percentage represents an unusually high return rate in litigation of this type and demonstrates that the class actively supports the results achieved on its behalf.

This favorable reception by the class constitutes "strong evidence" of the fairness of the proposed settlement and supports judicial approval.  See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 CIV 5587(PKL)(RLE), 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y., May 15, 2003, Leisure, J.) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement," quoting Ross v. A.H. Robbins, Inc., 700 F. Supp. 682, 684 (S.D.N.Y. 1988)); Wright, 2008 WL 2058519, at *7-8 (only 13 objections out of class of 3,500 is a "strong indication" of fairness); Velez v. MaJik Cleaning Serv., Inc., No. 03 Civ. 8698(SAS), 2007 U.S. Dist. LEXIS 46223, at *17-18 (S.D.N.Y. June 22, 2007).

3.  **The Stage of the Proceedings and the Amount of Discovery Completed Favor Final Approval**

Courts consider the stage of the proceedings when evaluating a class action settlement.  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005).  Such evaluation not only ensures that class counsel understands the strengths and weaknesses of the class claims before resolving them, but also affords the court with an opportunity to "intelligently make...an appraisal of the Settlement."  Id.  As detailed in the Joint Declaration, the parties have fully examined and discussed the legal and factual issues involved in this matter; they have also engaged in broad informal discovery surrounding settlement negotiations, as well as detailed evaluation of

potential damages.  Following these developments, the parties certainly "have a clear view of the strengths and weaknesses of their cases."  Id. (citation omitted).  See also In re EVCI Sec. Litig., supra, at *6.

<strong>4, 5, 6.     Risks of Class Prevailing – Establishing Liability, Damages  and Maintaining the Class Action Through Trial – Favor   Final Approval</strong>

Litigation inherently involves risks.  See In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y.1997).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  In re Ira Haupt & Co., 304 F.Supp. 917, 934 (S.D.N.Y.1969).  See also Velez, 2007 U.S. Dist. LEXIS 46223 at p.*21-22.

The risks involved in this litigation weigh heavily in favor of settlement.

For instance, Plaintiffs' class certification was potentially problematic. The parties stipulated to class certification for settlement purposes.  If the action were litigated, however, Defendant likely would have opposed certification.  See Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., No. CV-04-2195 (CPS), 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification … Accordingly, this factor weighs in favor of approving the settlement.").  See also Gilliam, 2008 WL 782596, at *4.

Furthermore, the risks of establishing liability and damages remained paramount, involving the inherent unpredictability of juries, the uncertainty of establishing the full extent of class-wide damages, and the potential unreliability of Defendant's time records.   See id.  See also In re EVCI Sec. Litig., supra, at *8 (describing risks intrinsic to the typical "battle of the experts" involved in establishing damages).   These risks would only be multiplied by the possibility of separate proceedings in several jurisdictions.  Plaintiffs' Second Amended Complaint involves 34 causes of action under the FLSA, ERISA, and labor laws of six states.  These complex multi-state claims present significant manageability issues; in anticipation of these problems, Class Counsel filed state

9

court litigation in Maryland and was prepared to proceed with additional state actions in Connecticut, Pennsylvania, Vermont, and Massachusetts.

**8, 9.**[4]   **The Maximum Gross Settlement Amount Is Clearly Reasonable In Light of the Best Possible Recovery and All Attendant Risks of Litigation**

Even absent the various risks and pitfalls involved in further litigation, the value of the Maximum Gross Settlement Amount justifies settling this case. Under the Settlement, claimants will each receive a substantial award, which is more than reasonable for the class to accept given the risk of establishing liability and damages and potential for delay. Based on BDO's expert analysis, the cash fund constitutes approximately 40-50% of C&S potential liability as well as approximately **two thousand** percent of Defendants' damages calculation. (Pomerantz Dec.). Furthermore, C&S' agreement to formulate and enforce clear and effective wage and hour policies confers an additional immediate benefit on the class members, bearing considerable monetary value. (Id.)

Given the length and difficulty of the process needed to reach this result, it is counsel's informed judgment that "there is little reason to believe that further settlement negotiations would result in any additional settlement funds." Wright, 2008 WL 2058519, at *10. Moreover: "There is simply no assurance that more years of litigation would result in any greater recovery." Id. at *1.

Settlements can be approved even where the benefits obtained are less than those originally sought. "The settlement does not have to be a brilliant one to secure judicial approval. The settlement may be approved if it is clear it secures some adequate advance for the class." In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 325 (N.D. Ga. 1993). "In evaluating the proposed settlement," the Court determines only whether it provides a "substantial recovery" in light of the relevant circumstances. In re Veeco Instruments, Inc. Sec. Litig., No. 05 MDL 0165(CM), 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007) (citations omitted). See also

---

[4] To Plaintiffs' knowledge, the seventh factor, the ability of the Defendants to withstand judgment, is not a relevant factor here.

Thompson v. Metro. Life Ins. Co., 216 F.R.D. 55, 65 (S.D.N.Y. 2003) (a settlement "is not a wish-list of class members" but a reasonable compromise of claims); Int'l Union v. Ford Motor Co., No. 05-74730, 2006 WL 1984363, at *21, 23 (E.D.Mich. July 13, 2006) (summarizing standards).

In fact, a settlement can be approved even when it amounts to a small percentage of the recovery sought.  See In Re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718 F. Supp. at 1103, where Judge Brieant remarked— "**The Court of Appeals has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought…The essence of settlement is compromise.**"  As the Second Circuit stated in Grinnell, 495 F.2d at 455, n.2: "**There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery.**"  See also Weinberger, 698 F.2d at 65 (affirming settlement approval where "it is not disputed that the recovery will only be a negligible percentage of the losses suffered by the class"). Only settlements that are "grossly inadequate" under the relevant circumstances fall outside of the "range of reasonableness" and warrant disapproval.  See In re EVCI Sec. Litig., supra, at *9.[5]

In accordance with this established jurisprudence, courts have consistently approved wage and hour settlements presenting less than "ideal" results for the class.  See, e.g., Gilliam, 2008 WL 782596, at *5 (settlement assuring immediate payment of a "significant amount of compensation

---

[5] Courts have often approved or proposed settlements even where the benefits represent only "a fraction of the potential recovery," and far less than the significant percentage of maximum recovery Class Counsel have won for C&S class members here.  See In re Sunrise Sec. Litig., 131 F.R.D. 450, 457 n.13 (E.D. Pa. 1990). For example, in In re Crazy Eddie Sec. Litig., 824 F. Supp. 320, 324 (E.D.N.Y. 1993), a settlement was approved where class members were awarded between 6 cents and 10 cents for every $1.00 lost.  See also In re Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D. 588, 590 (S.D.N.Y. 1992)(settlement of roughly 48 cents per share out of a potential $30 per share recovery); Cagan v. Anchor Savings Bank FSB, No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million dollar settlement that represented less than 2% of theoretical best possible recovery of $121,000,000); Mersay v. First Republic Corp. of Am., 43 F.R.D. 465 (S.D.N.Y. 1968) (court approved a 5-10% settlement); Behrens v. Wometco Enters., 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990) ("The mere fact that the proposed settlement of $.20 cents a share is a small fraction of $3.50 a share is not indicative of an inadequate compromise."); In re Prudential Inc. Sec. Ltd. P'ships Lit., MDL No. 1005, M-21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages).

for class members" not "grossly inadequate" even though representing only "a fraction of the best possible recovery");[6] Chiaramonte v. Pitney Bowes, Inc., No. 06 CV 1507 JM (NLS), 2008 WL 510765, at *6 (S.D.Cal. Feb. 25, 2008) (approving settlement where parties provided no estimate of potential recovery; noting that funds that are "only a fraction of the potential recovery" have been approved (citing case approving 6% recovery)); Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D.Cal. Jan. 26, 2007) (settlement estimated at 25-35% of possible recovery reasonable, supporting approval); Borcea v. Carnival Corp., 238 F.R.D. 664, 673-674 (S.D.Fla. 2006) ($6,250,000 fund reasonable for class of 40,000 employees; each participating class member will receive award based on length of service); Lenahan v. Sears, Roebuck and Co., No. 02-0045, 2006 WL 2085282, at *16 (D.N.J. July 24, 2006) ($15 million fund out of estimated $104 million exposure (14.4%) represents "good value" favoring approval); Does I v. The Gap, Inc., No. CV-01-0031, 2003 WL 22997250, at *1 & n.1 (D.N.Mar.I. Sept. 11, 2003) (noting prior approval of settlement benefit of "2% or less" of amount sought, representing "minimal success in the outcome of the litigation").   The estimated recovery here compares favorably with these precedents, even disregarding the critical element of prospective relief in this case.

> **D.**     **THE SETTLEMENT IS PROCEDURALLY FAIR AS IT IS A PRODUCT OF ARM'S LENGTH NEGOTIATIONS AMONG EXPERIENCED COUNSEL, INCLUDING HARD-FOUGHT MEDIATIONS BEFORE AN EXPERIENCED MEDIATOR AND FORMER FEDERAL JUDGE**

In evaluating a settlement's procedural fairness, a court considers whether the agreement was properly negotiated at arm's length.  "As long as the integrity of the negotiating process is ensured by the Court, it is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides."   In re Painewebber Ltd. P'ships Litig., 171 F.R.D. at 132.  This inquiry considers whether the settlement process has been corrupted

---

[6] In Gilliam, the average award to the class members was approximately $1,100, while the average award for members employed throughout the six-and-half-year class period in that case was approximately $2,000. These awards were determined to be a substantial benefit supporting settlement approval.  Here, the individual benefits to the class members are significantly more favorable.  (See Pomerantz Cert. ¶  ).

and whether Counsel has adequately represented the class.  See Weinberger, 698 F.2d at 74.

### 1.    Experienced Counsel Represented Both Parties in this Case.

Courts recognize that great weight is accorded to the recommendations of counsel, who are in the best position to evaluate the strengths and weaknesses of their cases. Chatelain, 805 F.Supp. at 212; In re EVCI Sec. Litig., 2007 WL 2230177, at *10 (citations omitted).  Here, both parties were represented by experienced counsel with substantial experience in wage and hour class action litigation.  (See Joint Dec.).

### 2.    The Settlement Was Negotiated by Experienced Counsel After Two Full-Day, In-Person Mediations Before Judge Politan, a Mediator With Significant Experience in Class Action Settlements.

The Settlement is the product of arm's length negotiations between Class Counsel and C&S.  Chatelain, 805 F. Supp. at 212 (strong presumption of fairness attaches to settlement shown to be result of arms-length negotiating); In re EVCI Sec. Litig., 2007 WL 2230177, at *10 (same). See also Gilliam, 2008 782596, at *4; In re AOL Time Warner ERISA Litig., No. 02 Civ. 8853 SWK, 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006).  The protracted settlement discussions were conducted over many months and culminated with a mediated settlement negotiated with the assistance, guidance, and oversight of Judge Politan, an experienced mediator and former federal judge.  During negotiations, the Parties conducted multiple full-day, face-to-face mediations, which were followed by lengthy telephone conferences.  (Joint Dec. ¶¶ )  Furthermore, the Parties have engaged in lengthy, arms-length negotiations regarding the preparation and drafting of the voluminous settlement documentation now on file with the Court.  (Id. ¶ )  Additionally, Plaintiffs' counsel engaged prominent accounting experts – including Glenn Pomerantz of BDO Seidman – to corroborate its analysis of this litigation and the Parties' independent views as to the fairness of the settlement to the class.  (Id. ¶ ; Pomerantz Dec. ¶ )  There is no evidence that the negotiations were collusive in any way.  Accordingly, this factor favors approval of the Settlement.

**POINT II**

**PLAINTIFFS' APPLICATION FOR $4,390,826.23 IN ATTORNEYS'
FEES AND  $ 694,465.97 IN EXPENSES SHOULD BE APPROVED**

**A.      THE APPLICATION.**

The Settlement Agreement provided that, subject to Court approval, Plaintiffs' counsel would receive attorney's fees in an amount equal to 33 percent of the Maximum Gross Settlement Amount following the deduction of certain costs and expenses.   Plaintiffs now apply for $4,390,826.23 in attorneys' fees and $694,465.97 in expenses.  As shown below, the attorneys' fee application is fair and reasonable and should be approved.

**B.      THE RELEVANT FACTORS.**

In determining an appropriate award of class action attorneys' fees, courts have adopted the principles articulated by the Second Circuit in Grinnell, 495 F.2d at 471.  To paraphrase:

> The courts do not consider that a "just and adequate fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees."  The courts regard this calculation as a "starting point for analysis." To this, "other, less objective factors" are applied to reach the ultimate award.  The "foremost" of these factors is the attorney's "risk of litigation, i.e., the fact that despite the most vigorous and competent of efforts success is never guaranteed."

Other generally accepted factors as stated in Grinnell, at 470 are:

1.      the standing of counsel at the bar – both counsel receiving award and opposing counsel,

2.      time and labor spent,

3.      magnitude and complexity of the litigation,

4.      responsibility undertaken,

5.      the amount recovered,

6.    what it would be reasonable for counsel to charge a victorious plaintiff.

See also Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000) (summarizing the "traditional criteria").

In class suits for recovery of withheld wages and/or overtime, "public policy favors…an award" of attorneys' fees.  "[W]ere it not for this class action, many of the plaintiffs' claims likely would not be heard."  Furthermore, if counsel were not sufficiently compensated for its efforts, attorneys would likely be unwilling to take on such cases.  Frank, 228 F.R.D. at 189.  See also Goldberger, 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

## C.    A REVIEW OF THE RELEVANT FACTORS SUPPORTS COUNSEL'S   FEE APPLICATION.

### 1.    The Litigation Has Conferred Substantial Benefits on the Class as a Consequence of Counsel's Efforts

As discussed above, the benefits of the settlement to Plaintiffs and the class are substantial, approximating nearly half of their estimated damages.  Furthermore, the prospective relief in this case confers a significant additional benefit, ensuring future compliance with the law and providing considerable monetary value.  It is clearly established that "counsel who creates a substantial benefit for a class is entitled to a commensurate award of fees."  In re EVCI Sec. Litig., 2007 WL 2230177, at *15.  As further discussed, counsel achieved this favorable result in the face of complex and risky litigation presenting numerous pitfalls and a significant potential of little or no recovery.

### 2.    The Efforts of Plaintiffs' Counsel

The prosecution of this action required a high level of experience and expertise in complex class action litigation, as well as the ability to provide such service under difficult circumstances against Defendant represented by Littler Mendelson, a nationally recognized firm whose reputation for zealous representation of its clients is well known.  The extent and nature of the efforts of

Plaintiffs' counsel are described in detail by the Joint Declaration.

**D.      THE PERCENTAGE-OF-FUND AND LODESTAR APPROACHES IN EVALUATING CLASS ACTION ATTORNEY'S FEES.**

Under the "percentage-of-the-fund" approach, the court awards as attorneys' fees a reasonable percentage of the fund created by class counsel's effort.[7]  The "lodestar" method – often utilized as a shorthand "cross-check" (see Goldberger, 209 F.3d at 50) – entails multiplying the number of hours the attorneys expended by their current hourly rates to create a "lodestar" figure; most often this "lodestar" is adjusted upward or "multiplied" by the court to compensate counsel for the contingent nature of the case, the quality of work performed, delay in payment, and other factors.  Plaintiff's counsel is seeking a multiplier of only 1.45, "at the lower end of the range of multipliers awarded by courts in the Second Circuit."[8]  In re Lloyd's Am. Trust Fund Litig., No. 96 Civ.1262 RWS, 2002 WL 31663577 at *27 (S.D.N.Y. Nov. 26, 2002) (multiplier of "just" 2.09).

---

[7] "The percentage-of-recovery method is used in common fund cases on the theory that members of the class would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund."  In re Computron Software, Inc. Sec. Litig., 6 F. Supp.2d 313, 321-322 (D.N.J. 1998).  The percentage method further provides a "powerful incentive for the efficient prosecution and early resolution of litigation" and avoids cumbersome fee petitions.  In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577 at *25.

[8] See, e.g., In re EVCI Sec. Litig., 2007 WL 2230177, at *17 & n.6 (noting that "multipliers of nearly 5 have been deemed 'common' by courts in this District" and collecting cases with multipliers of up to 6.96; awarding multiplier of 2.48 as "justified" and "reasonable"); In re Buspirone Antitrust Litig., No. 01-MD-1410, at *42-43 (S.D.N.Y. Apr. 11, 2003)(awarding 8.46 multiplier, justified in part by the fact that the case settled with substantial work remaining if the litigation went forward; thus, if settlement were delayed "the Lodestar would have gone up and the multiplier would have gone down.")(cited in In re Visa Check/Mastermoney Antitrust Litig., 297 F.Supp.2d 503, 523 n.29 (S.D.N.Y. 2003)); In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *27 (citing fee awards of up to 12 times lodestar); Maley, 186 F.Supp.2d at 369, 371 (citing multipliers in S.D.N.Y. up to 7.7 and describing requested multiplier of 4.65 as "modest"); Roberts v. Texaco, Inc., 979 F.Supp. 185, 197 (S.D.N.Y. 1997) (in which Judge Brieant approved a 5.5 multiplier in an employment discrimination action); In re RJR Nabisco Inc. Sec. Litig., No. 88 Civ. 7905(MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (allowing multiplier of 6); Cosgrove v. Sullivan, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier).  See also Craft v. County of San Bernardino, No. EDCV05-00359 SGL, 2008 WL 916965, at *11 (C.D.Cal. Apr. 1, 2008) (citing "ample authority" for 5.2 multiplier, including collected cases nationwide with multipliers ranging up to 19.6); In re Charter Commc'ns Inc. Sec. Litig., No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D.Mo. June 30, 2005) (5.61 multiplier "falls within the range of multipliers found reasonable for cross-check purposes").  Cf. In re Visa Check, 297 F.Supp.2d at 521-525 (rejecting proposed 9.68 multiplier – objected to by class members – in mega fund case settled on eve of trial; awarding 3.5 multiplier resulting in $220 million fee award), aff'd, sub nom. Walmart Stores, 396 F.3d 96.

Under either the "percentage-of-the-fund" analysis or the "lodestar" approach, the fee sought herein is amply justified. The overwhelmingly positive reaction of the class to the settlement attests to its approval of counsel's fee application and to the reasonableness of the request. See Maley, 186 F.Supp.2d at 374; In re Veeco Instruments Inc. Sec. Litig., 2007 WL 4115808, at *10. See also Stop & Shop Supermarket Co. v. Smith Kline Beecham Corp., No. Civ.A. 03-4578, 2005 WL 1213926, at *18 (E.D.Pa. May 19, 2005) (support of named plaintiffs and lack of objection from class members "neutralized" any questions as to reasonableness of fee award amounting to lodestar multiplier of 15.6); In re Xcel Energy Inc. Sec., Derivative & "ERISA" Litig., 364 F.Supp.2d 980, 1002 (D. Minn. 2005) (lack of objection to fee request "can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel").

### 1. The $4,390.826.23 Attorneys' Fee Request Represents Approximately 31% Percent of the Available Settlement Benefit and Is Well Within the Range of Reasonableness.

Most federal judges are departing from reliance on the "lodestar-multiplier" doctrine, and now use a "percentage" approach in common fund cases, either exclusively or at the discretion of the trial court. In re ATI Techs., Inc. Sec. Litig., 2003 U.S. Dist. LEXIS 7062, at *10 (E.D. Pa., Apr. 28, 2003); Paul, Johnson, Laston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). The Second Circuit has recently confirmed that "the trend in this Circuit is toward the percentage method." Wal-Mart Stores, Inc., 396 F.3d at 122. See also In re EVCI Sec. Litig., 2007 WL 2230177, at *15-16 & n.3; In re Veeco Instruments Inc. Sec. Litig., 2007 WL 4115808, at *2-3; In re AOL Time Warner Sec. and "ERISA" Litig., No. 02 Civ. 5575(SWK), 2006 WL 3057232, at *9 (S.D.N.Y. Oct. 25, 2006) ("every significant Southern District opinion facing the issue since Goldberger has embraced the percentage approach"). The requested attorney's fee represents slightly over 31% of the Maximum Gross Settlement Amount.[9] If the full benefits of the settlement

---

[9] In Masters v. Wilhemina Model Agency, Inc., 473 F. 3d 423, 437 (2d Circ. 2007), the Second Circuit ruled that "An allocation of fees by percentage should therefore be awarded on the basis of total funds made

are considered, the percentage is considerably lower; the $14,000,000 cash figure greatly underestimates the monetary value of the settlement to the class by disregarding the critical prospective measures adopted by C&S.

Courts have established that approximately 33 percent is a standard fee in complex class action cases like this one where plaintiffs' counsel have achieved a good recovery for the class.  See In re EVCI Sec. Litig., supra, at *17 & n.5 (citing fees in the range of 25% in cases with settlements in the hundreds of millions of dollars and fees of 33 1/3% as common in smaller cases "where there has been a significant monetary recovery early on in the litigation"); Gilliam, 2008 WL 782596, at *5 (wage and hour settlement providing for fee of "one-third of the common fund after deduction of legal costs, which is **consistent with the norms of class litigation in this circuit**"); In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577 at *26 ("In this district alone, there are scores of…cases where fees…were awarded in the range of 33 1/3 % of the settlement fund."); In re Veeco Instruments Inc. Sec. Litig., 2007 WL 4115808, at *4 n.5 ("Indeed, there are numerous…cases in this District alone where fees were awarded in the amount of 33 1/3% of the settlement fund…"); Strougo, 258 F.Supp.2d at 263; RMED Int'l, 2003 U.S. Dist. LEXIS 8239, at *6; In re Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D. 588, 597 (S.D.N.Y. 1992).  See also Wright, 2008 WL 2058519, at *10 (approving $8 million fee in employment case, representing over 38% of total relief, which also included $999,999.79 in litigation expenses and $11,869,856.25 to class

---

available **whether claimed or not**" and that the district court had thus committed reversible error in calculating a fee award based only upon claimed funds to be paid out to class members.  In reaching this conclusion, the Court sided with other federal circuits reaching similar holdings and rejected the contention that utilization of the full available settlement funds would create a "windfall" for attorneys.  Rather than an attorney's fee revolving on the vagaries of the number of claims in individual cases, Masters and its brethren have reasoned that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."  Id.  See also Cent. States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 249 (2d Cir. 2007) (percentage method "calculates the fee award as some percentage of the settlement fund created for the benefit of the class") (citing Masters); 7B Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1803.1 (3d ed. 2008) (characterizing Masters as adopting view that fees should be calculated based on total potential recovery made available by settlement even where unclaimed funds revert to defendant).

members).[10]  With regard to the Maximum Gross Settlement Amount in this matter (as opposed to a "megafund" of $100 million or more), the percentage provided for by the Agreement does not present a danger of a "windfall" and is typically awarded by a reviewing court.  In re Veeco, 2007 WL 4115808, at *7, citing Taft, 2007 U.S. Dist. LEXIS 9144 (awarding 30% of $15,175,000 settlement).[11]

In a recent case, Judge Crotty awarded an attorney's fee of $399,983.81 to current Class Counsel where the total available settlement monies equaled $1,275,000.  Rosenberg v. IKON, No. 05-cv-09131-PAC (S.D.N.Y. Jan. 22, 2008).  Thus, the awarded fee represented 31.4% of the gross settlement benefits, comparable to the figure here.

### 2.   Analysis under the Lodestar School

#### (a)   *Counsel's Lodestar is Based Upon Reasonable Rates and Hours Expended*

As set forth in the Joint Declaration, class counsel and staff devoted over 6,000 hours to prosecute this litigation.  The current hourly rates for Plaintiffs' counsel are $650 for Jeremy Heisler, Esq., $625 for Steven L. Wittels, Esq., and $600 for David W. Sanford, Esq.  (See Joint

---

[10] See also, e.g., Beech Cinema Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195 (S.D.N.Y. 1979) (fees of 53.2% of common fund), aff'd, 62 F.2d 1106 (2nd Cir. 1980); Green v. Emerson Ltd., [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. 1987) (46.2%); Baron v. Commercial & Indus. Bank of Memphis, [1979-1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,132 (S.D.N.Y. 1979) (36%); In re Allstate Sec. Litig., No. 88CIV9282 (PKL), 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) (35%); In re Crazy Eddie Sec. Litig., 824 F. Supp. 320, 325-326 (S.D.N.Y. 1993) (34%); Spann v. AOL Time Warner, No. 02-Civ.-8238-DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)(ERISA)(one-third of fund); Maley, 186 F.Supp.2d at 368, 370 (33-1/3%) Becker v. Long Island Lighting Co., 64 F.Supp.2d 174 (E.D.N.Y. 1999)(ERISA)(one-third); In re Medical X-Ray Film Antitrust Litig., No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) (33.33% of fund); Cohen v. Apache Corp., No. 89 CIV. 0076 (PNL), 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. Apr. 21, 1993) (33.33%).

[11] See also, e.g., Lenahan, 2006 WL 2085282, at *21 (awarding 30% of $15,000,000 common fund in wage and hour case; fees of 30 percent or more "regularly awarded in labor and employment class actions"); Mehling v. New York Life Ins. Co, 248 F.R.D. 455, 466 (E.D.Pa. 2008) (30% of $14,000,000 ERISA settlement; noting that 33.3% and 35% awards approved for funds of similar size); In re CMS Energy ERISA Litig., No. 02-72834, 2006 WL 2109499, at *3 (E.D.Mich. June 27, 2006) (28.5% of $28,000,000 fund, plus interest); Berger v. Xerox Corp. Ret. Income Guar. Plan, No. 00-584-DRH, 2004 WL 287902, at *2 (S.D.Ill. Jan. 22, 2004) (29% fee "is at or below the market rate for this and similar litigation"); Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002) (28% of $97 million settlement reasonable in ERISA action).

Dec. ¶ ).[12]  In Binetti v. Washington Mutual Bank, No. 06 Civ. 1732 (KMK) (S.D.N.Y. Apr. 15,

2008), this Court approved a fee application by Plaintiff's counsel which was based on these rates.

Class Counsel further notes that amounts similar to its current rates have been accepted by Judge

Crotty in Rosenberg, supra, and by other courts.  (Joint Dec. ¶ ).

As Judge Colleen McMahon recently held in approving a fee award based on a current

hourly rate similar to the ones involved in this fee application:

> The use of **current rates** to calculate the lodestar figure has been repeatedly
> endorsed by courts as a means of accounting for the delay in payment inherent in
> class actions and for inflation . . . . In determining the propriety of the hourly rates…
> the standard is the rate charged in the community where the services were
> performed... Thus, substantial precedent – as well as a market check – demonstrates
> that the rates utilized by Plaintiffs' Counsel in calculating its lodestar are reasonable.

In re Veeco Instruments Inc. Sec. Litig., 2007 WL 4115808, at *9 n.7.  See also In re NTL Inc. Sec.

Litig., No. 02 Civ. 3013(LAK), 2007 WL 1294377 at *8 (S.D.N.Y. May 2, 2007) (approving rates

up to $695 for partners; citing cases approving rates up to $850; In re Gilat Satellite Networks, No.

CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18, 2007) (approving rates

up to $725 for partners and up to $525 for associates); *In Focus: Billing; A Firm-by-Firm Sampling

of Billing Rates Nationwide*, National Law Journal, December 6, 2004, at 22 (2004 billing survey

showing that senior partners in New York City charged as much as $750 per hour).[13]

In Brody v. Catell, 2007 N.Y, Misc. LEXIS 4647 (Sup. Ct. Kings Co. 2007), Justice

Demarest approved a $350,000 legal fee to plaintiff's attorneys, not-withstanding that the Brody

suit achieved only equitable and no monetary relief.  The Court utilized, inter alia, the hourly rates

of $745 for a partner of Weiss & Lurie and $610 and $595 for senior associates, finding such rates

to be "in line with current hourly rates."  (See Exhibit 1, attached).

---

[12] Current hourly rates for co-counsel are $600 for Peter B. Prestley and $575 for William G. Madsen.

[13] See also Craft, 2008 WL 916965, at *9 (awarding rates up to $725 per hour in civil rights action; noting
that "Congress intended civil rights fees to be comparable to that for other types of equally complex Federal
litigation, such as antitrust cases") (citation omitted).

Counsel's hours were reasonably expended, and are properly the basis for the lodestar calculation.  See In re Union Carbide Corp., 718 F. Supp. at 1109-10.

(b)  *The Proposed Multiplier is Supported By Precedent and Public Policy*

The straight "lodestar value" of counsel's services on this case comes to $3,019,733.50. (Joint Dec.)  The resulting multiplier of 1.45 is firmly supported in this case.  As explained by the Second Circuit: "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services."  Grinnell, 495 F.2d at 470-71.  The risks and challenges of this litigation were substantial, as described in the Joint Declaration, and counsel navigated a favorable resolution of the class' claims.

The requested multiplier is amply authorized by precedents routinely approving far higher figures.  See cases collected n.8, supra.  A significant multiplier is deemed particularly appropriate in an action settled at this stage of the proceedings, in order to encourage the efficient resolution of cases and economical use of judicial resources.  See, e.g., In re Visa Check/Mastermoney Antitrust Litig., 297 F.Supp.2d 503, 525 (S.D.N.Y. 2003) ("Were the case not so fully litigated, settling only on the eve of opening statements, a larger multiplier [than 3.5] might well be necessary to properly reward Class Counsel and encourage counsel to bring similar cases in the future.").

**POINT III**

**PLAINTIFFS' APPLICATION FOR INCENTIVE AWARDS IS SUPPORTED BY PRECEDENT AND THE PUBLIC INTEREST AND SHOULD BE APPROVED**

The Settlement Agreement provides for service payments in the aggregate amount of $400,000 for the sixteen Named Plaintiffs as well as thirty-nine opt-in plaintiffs and other class members who were interviewed by Defendants, prepared for interviews, or provided sworn declarations.  Individual service payments – tailored to the applicant's role in the litigation – are mostly below $5,000 and for any one class member do not exceed $25,000.

Given the fairness of the negotiation process (facilitated by Judge Politan) and resulting overall settlement, the Court should approve Counsel's request for service payments. The purpose of these payments is to provide modest compensation to class members who came forward and devoted their time to assisting Counsel develop their theories of the case, as well as lent their names to the action. Plaintiffs' counsel and experts utilized the extensive information provided by these class members in assessing liability and damages and in formulating arguments to the mediator and opposing counsel. Public policy strongly approves of incentive payments as a reward for these class members' role in the lawsuit and to Named Plaintiffs for acting as class representatives. The collective incentive awards represent less than three percent of the overall cash fund, and barely graze the benefits to the class as a whole and to its individual members. Moreover, the lack of objection from the class demonstrates the fairness and reasonableness of the incentive payments.

### A. COURTS HAVE OFTEN AWARDED INCENTIVE PAYMENTS IN SIMILAR CASES BASED UPON THE EFFORTS ASSUMED BY PLAINTIFFS AND BURDENS AND RISKS INCURRED

In Roberts v. Texaco, Inc., 979 F. Supp. 185, 201 (S.D.N.Y. 1997), Judge Brieant encapsulated the prevailing rule on awarding incentive payments in a class action:

> In this Circuit, the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award. The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.

Id. at 201 (citations omitted). Accord: RMED Int'l, 2003 U.S. Dist. LEXIS 8239 at *2; Fears v. Wilhelmina Model Agency, Inc., No. 02-Civ.4911(HB), 2005 U.S. Dist. LEXIS 7961, at *9-10 (S.D.N.Y. May 5, 2005).

**Incentive payments have frequently been awarded to employee-plaintiffs in wage and**

**hour class actions**.  See Velez, 2007 U.S. Dist. LEXIS 46223, at *23-24:

> Through their service as class representatives, Velez and Leal exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers…. As class representatives, Velez and Leal dedicated a significant amount of time, over several years, to working with and monitoring the work of Lead Counsel.  In addition, they became active participants in the pretrial discovery activities by, among other things, undergoing lengthy depositions.  The risks to which Velez and Leal allowed themselves to be exposed, as the class representatives, and the effort the expended on behalf of all class members, justifies their receipt of an incentive award.

Accord: Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D.Cal. Jan. 26, 2007) (approving $25,000 "enhancement" to each of four named plaintiffs); West v. Circle K Stores Inc., No. Civ. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *26-28 (E.D.Cal. Oct. 20, 2006) ($15,000 each to two named plaintiffs); Frank, 228 F.R.D. at 188 ($10,523.37 awarded as incentive payment; highlighting risks and responsibilities assumed by lead plaintiff despite lack of evidence supporting threat of actual retaliation); Gilliam, 2008 WL 782596, at *3, 5 (incentive payments to six named plaintiffs for services to class "reasonable" and "appropriate use of the overall settlement").[14]  See also Ruan, Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions, *Employment Rights and Employment Policy Journal,* 10, pp. 395, 410-411 (2006) (discussing special risks confronting plaintiff bringing class action against employer).

### B.     COURTS HAVE AWARDED INCENTIVE PAYMENTS IN AMOUNTS FAR GREATER THAN THOSE CONTEMPLATED HERE

Incentive awards ranging from $50,000 to $300,000 have been awarded to class plaintiffs in a variety of contexts, including employment discrimination, antitrust, and consumer fraud suits. See, e.g., Roberts, supra (awarding $50,000 and $85,000 to two of the named plaintiffs in racial

---

[14] See additionally Chiaramonte, 2008 WL 510675; Romero v. Producers Dairy Foods, Inc., No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D.Cal. Nov. 14, 2007); Aguayo v. Oldenkamp Trucking, No. F04-6279 AWI LJO, 2006 WL 3020943 (E.D.Cal. Oct. 17, 2006); Su v. Elec. Arts, No. 6:05-cv-131-Orl-28JGG, 2007 U.S. Dist. LEXIS 72961, at *18-19 (M.D.Fla. Aug. 29, 2007); Lenahan, 2006 WL 2085282, at *8 n.7; Stokes v. Saga Int'l Holidays, Ltd., 376 F.Supp. 2d 86 (D.Mass. 2005); Camp v. Progressive Corp., No. Civ.A. 01-2680, 2004 WL 2149079 (E.D.La. Sept. 23, 2004).

discrimination employment class action); Wright, 2008 WL 2058519, at *7 (approving $50,000 awards to each of 11 named plaintiffs in employment discrimination action); In re Dun Bradstreet Customer Serv. Litig., 130 F.R.D. 366 (S.D. Ohio 1990) (incentive awards ranging from $35,000 to $55,000); Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ($50,000 incentive award); Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250, (S.D. Ohio 1991) (six class representatives granted incentive awards of $50,000 each); Iberte Capital Group v. Capwill, No. 5:99-CV-818, 2007 U.S. Dist. LEXIS 64869 (N.D. Ohio Aug. 29, 2007) ($95,172.47 granted to class plaintiff); Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (four representative plaintiffs awarded $300,000 each); Beck v. Boeing Co., No 00-CV-301P, at 4 (W.D.Wash. Oct. 8, 2004) (cited in Wright, supra) (approving $100,000 awards to each of 12 plaintiffs).

Plaintiffs also respectfully direct the Court's attention to Judge Crotty's recent order in Rosenberg v. IKON, supra, approving incentive awards ranging from $30,000 to $60,000 in an employment discrimination action.

## POINT IV

### ADEQUATE NOTICE HAS BEEN PROVIDED TO THE CLASS.

The class notice in this case informed each class member of the terms of Settlement. Courts recognize that class notice is sufficient if it "may be understood by the average class member." Wal-Mart Stores, 396 F.3d at 114; see also Churchill Vill. v. G.E., 361 F.3d 566, 575 (9th Cir. 2004), cert. denied, 125 S. Ct. 556 (2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

## POINT V

### CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE.

This Court should certify the classes as final. The benefits of the proposed Settlement can

be realized only through the final certification of a settlement class.  Judge Brieant preliminarily certified the classes in the February 25, 2008 Order.  Final certification is now appropriate.

## **CONCLUSION**

The settlement under consideration represents a fitting resolution to this matter, one resoundingly endorsed by the class members.  Accordingly, the proposed classes should be finally certified, and the settlement approved as final.  Plaintiff's application for attorneys' fees, expenses, and a total of $400,000 in incentive awards should be granted, and the form of final judgment submitted by the parties signed and entered.

DATED: July 21, 2008                     Respectfully submitted,

                                             /s/ Steven L. Wittels
                                         Steven L. Wittels, (SLW-8110)
                                         Jeremy Heisler, (JH-0145)
                                         **SANFORD WITTELS & HEISLER, LLP**
                                         950 Third Avenue, 10th Floor
                                         New York, NY 10022
                                         Telephone: (646) 723-2947
                                         Facsimile: (646) 723-2948

                                         David Sanford, D.C. Bar No. 457933
                                         **SANFORD WITTELS & HEISLER, LLP**
                                         1666 Connecticut Avenue, NW, Suite 310
                                         Washington, D.C. 20009
                                         Telephone: (202) 742-7780
                                         Facsimile:  (202) 742-7776